[No. 22642. *En Banc.* March 30, 1931.]

LENA DAHL, *as Executrix of the Estate of Sophia Gordon, Deceased,* v. BESSIE MOORE *et al., Respondents.*

GUSTAVE DAHL *et al., Appellant,* v. BESSIE MOORE *et al., Respondents.*[1]

[1] Reported in 297 Pac. 218.

504

*Robert B. Abel* and *Homer T. Bone,* for appellant.

*Preston, Thorgrimson & Turner,* for respondent Moore.

*Poe, Falknor, Falknor & Emory,* for respondent Dilling Vradenburg Organization.

HOLCOMB, J.—Two actions were consolidated for trial and for appeal herein.

Appellants Gustave Dahl and Lena Dahl are husband and wife. They brought suit against respondents for damages due to injuries received in an automobile accident. Appellant Lena Dahl, as executrix of the estate of Sophia Gordon, sued for damages for the death of Sophia Gordon, which resulted from the same automobile accident. At the conclusion of the case in chief of appellants, upon motion of both respondents in both cases, the trial court granted nonsuits, from which these appeals were brought.

The non-suits were granted by the trial court for the reason that it held that the relationship between appellants and respondents was one of guests and host, in which case gross negligence would be necessary, which had not been shown.

Sophia Gordon, the deceased, was a widow and a sister of Mrs. Dahl. In September, 1929, she and her two children were living in the home of the Dahls. Respondent Bessie Moore, at that time, was engaged in the real estate business, being a saleslady for respondent Dilling Vradenburg Organization, Inc., a corporation. During the period in question, it was conducting a campaign to sell real estate in a district known as Lake Ridge, near Seattle.

About a week before September 22, a real estate agent of the corporation came to the home of the Dahls and talked to Mrs. Gordon in the presence of Mrs. Dahl. The agent wanted Mrs. Gordon to go to Seattle

to look at some property which he was handling for the Dilling Vradenburg Organization. The agent came to their residence every day, and sometimes twice a day, during the week before September 22. The agent made arrangements to take the Dahls and Mrs. Gordon to Seattle to view the property. He presented to each of them a ticket as follows:

"This ticket is your reservation for a tour of the Scenic Lake Washington Boulevards and LAKE RIDGE.

"Your reservation will be made for luncheon on 9/22 Date

"A private car will call for you at a. m. —.
             p. m. —.

"Should you be unable to keep your appointment please notify the DILLING VRADENBURG ORGANIZATION by 5 p. m. on the day previous.

"No. 1756

"Presented by.............................................

"TACOMA BRANCH, 620 Provident Bldg.,

"Phone Main 4970—Tacoma."

On Sunday morning, September 22, at about 11:30, respondent Mrs. Moore called to take the Dahls, Mrs. Gordon and her daughter to Seattle. It is undisputed that the Tacoma manager of the Dilling Vradenburg Organization instructed Mrs. Moore to call for and take the Dahls and Mrs. Gordon to Seattle, which she did. The purpose of Mrs. Moore in taking the Dahls and Mrs. Gordon to Seattle was to show them the real estate known as the Lake Ridge district, and sell them real estate therein. Mrs. Moore was in the regular employment of the corporation. She owned her own car. If she made a sale, she got a commission which was her only compensation. If no sale resulted, and she had a car load, she would be paid one dollar for gas and oil by the corporation. The tickets given to the Dahls and Mrs. Gordon were for the purpose of setting a day for the trip, identifying the holders there-

of at the office of the company, and providing a lunch for them on the grounds.

It is undisputed, also, that if a sale was consummated all parties benefited. Dahl testified that he was in the market to buy real estate if he had a good chance. The agents representing the company talked to Mrs. Gordon most of the time. The manager of the Tacoma branch and Mrs. Moore testified that had any sale been made, they would have been benefited.

Mrs. Moore drove from Tacoma to Seattle by way of Renton. After leaving Renton a distance of two or three miles, a Ford roadster, driven by one Van Thul, attempted to go around and pass her. When the Ford pulled up along side of her, Van Thul sounded his horn. Mrs. Moore veered toward the left side of the highway and speeded up her car. Van Thul applied his brakes and, the pavement being wet, the car swerved slightly causing it to bump against the left rear fender of Mrs. Moore's car. Thereupon Van Thul, as he said, "stepped on the gas" to avoid hitting a car coming towards them, then about one hundred feet distant, and went ahead of Mrs. Moore.

At the time Van Thul attempted to pass Mrs. Moore, she was talking real estate to the other occupants of the car, looking around to those in the rear seat and telling them about the property in Lake Ridge and in the vicinity of Renton. After the Ford passed, Mrs. Moore ran along the edge of the pavement on the dirt shoulder alongside the pavement, which at that place was from nine to eleven feet in width, for a distance of about ninety feet, and went over a bluff. There were automobile tracks along this dirt shoulder. Mrs. Moore did not once apply her brakes in an effort to stop her car, but, on the contrary, speeded up her car, according to the undisputed evidence. A fair inference from the facts last stated is that Mrs. Moore lost con-

trol of her car, ran it off the bank and over the bluff.
The result was the killing of Mrs. Gordon and the injury of the other occupants.

The evidence also shows that the road, known as the
Renton Highway, is twenty feet wide, and that it winds
along the southwest shore of Lake Washington. Van
Thul testified that, at the point which he marked on
the map introduced in evidence, where he started to
pass Mrs. Moore's car, he could see ahead seven
hundred feet. Respondents introduced some photographs showing a view of the place in the road where
the accident occurred, looking south at the double
curve, while the automobiles in question were driving
north. It is contended that, by looking at these photographs, the court can see at once the impossibility of
obtaining an unobstructed view ahead for any appreciable distance looking north, when one is passing
another car in this curve. From the view as shown by
the photographs it is urged that the physical facts conclusively controvert the testimony of Van Thul.

The testimony of Van Thul, that he could see seven
hundred feet ahead from the place where he started to
pass Mrs. Moore's car, is undoubtedly no more than a
rough estimate. It may have been no more than five
hundred or six hundred feet. Nor are we able to say
from the photographs in evidence what the perspective
was, or what distance is shown thereby, so that the
testimony of Van Thul is conclusively discredited. At
all events, we consider that it would have been a question for the jury.

Counsel for appellants make no claim that
there was evidence of gross negligence on the part of
Mrs. Moore, but contend that the rule of host and guest
does not apply in this case, but that the parties were
joint venturers, and therefore evidence of ordinary

negligence on the part of Mrs. Moore was sufficient to take the case to the jury.

We have held that to constitute a joint venture there must be an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. *Jensen v. Chicago, Milwaukee & St. Paul R. Co.*, 133 Wash. 208, 233 Pac. 635; *Rosenstrom v. North Bend Stage Line*, 154 Wash. 57, 280 Pac. 932.

We have also held that, in the case of a gratuitous bailment, or that of a guest being carried in an automobile gratuitously, the benefit is not mutual, but all on one side. *O'Brien v. Woldson*, 149 Wash. 192, 270 Pac. 304. The reason there given is that the guest is the only one who receives the benefit; that it is of no advantage to the driver of the automobile to carry the guest; hence, the gross negligence rule applies.

Under the undisputed evidence in this case, the purpose of the trip was primarily for the profit of the realty company and its selling agent. The company arranged the trip, its date and its conductor and sales agent, Mrs. Moore. Had Mrs. Moore sold real estate to any of the parties as the result of the automobile trip in her car, she would have received a stated commission.

While the status involved here was not precisely that of a paid carrier, it was similar to it. The corporation sent Mrs. Moore to transport these parties to view its property. Mrs. Moore, while not a public carrier, was carrying these parties for her intended profit, and that of her employer. The riders in the car were being carried for their benefit.

Whether this constituted them co-venturers under our decisions, or not, it is clear that their relations were not those of host and gratuitous passengers. The

conclusion inevitably follows that the rule of gross negligence being necessary for injuries inflicted upon them in their person or property by the negligence of the driver, is not applicable. Under the evidence recited, it seems plain that there was sufficient to go to the jury as to Mrs. Moore on that question. *O'Brien v. Woldson, supra.*

■ On the other hand, the corporation respondent insists that no liability attaches to it in employing Mrs. Moore as its agent on the principle of *respondeat superior.* It asserts that the corporation was in no way responsible for the control and operation of the details of the trip; that she drove her own car, could go any route she selected and would receive only a commission in case of success.

Decisions are cited which we have examined. *Barton v. Studebaker Corporation of America,* 46 Cal. App. 707, 189 Pac. 1025; *May v. Farrell,* 94 Cal. App. 703, 271 Pac. 789; *McCarthy v. Souther,* 83 N. H. 29, 137 Atl. 445; *Pyyny v. Loose-Wiles Biscuit Co.,* 253 Mass. 574, 149 N. E. 541; *Aldrich v. Tyler Grocery Co.,* 206 Ala. 138, 89 South. 289; *Khoury v. Edison Electric Illuminating Co.,* 265 Mass. 236, 164 N. E. 77.

The second of the above cited California cases was distinguished from the first one because, in the latter case, evidence showing a certain measure of control of the operation of the agent and his car was shown which was held to be sufficient to take the case to the jury.

The cited cases involved traveling salesmen using their own cars, who were their own masters in respect to the time they should devote to the business of their employers and to the places within certain designated territory where they should solicit sales.

In none of them was involved a case like this, where an employer appointed a certain person as agent, to

transport certain persons who had been solicited to become its customers, on a definite errand of the employer—to view its property and persuade some of the parties to buy some of the property. The selection of Mrs. Moore as its agent for that purpose at the same time selected her car and herself as its driver.

Hence, none of the cited cases fit this case.

We can find no case exactly apposite. The *O'Brien* case, *supra,* is authority to the effect that negligence of one co-venturer cannot be imputed to another injured by his negligence and that the rule of gross negligence is not applicable in such a case.

*Kludas v. Inland-American Printing Co.,* 149 Wash. 180, 270 Pac. 429, cited by appellants, was a case where the driver of an automobile owned by himself, negligently struck a pedestrian. There was dispute as to whether or not, at the time of the injury, the driver was upon the business of his employer, or on an errand of his own. It was held that the question was one for the jury, which had found the facts in favor of the injured person and against the employer of the driver.

By analogy, that decision sustains a ruling here, that, Mrs. Moore having indisputably been selected as agent of the company to take appellants on the trip in question, it is liable for her ordinary negligence the same as she is. Had one of its managing officers, a principal or vice principal, taken it upon himself to so transport prospective purchasers, it could not be successfully contended that the company would not be liable for his ordinary negligence committed while so acting.

Having designated another to do the same thing for the company, upon sound reason we see no grounds for not holding the company to the same liability.

We are not deciding that there was negligence on the part of the driver of the car. We are only holding

that there was sufficient evidence thereof for a jury to determine.

The judgment is reversed, and the cause remanded for a new trial.

MITCHELL, FULLERTON, PARKER, and BEELER, JJ., concur.

BEALS, J. (specially concurring)—Under the facts disclosed by the record in this case, I am satisfied that respondent Bessie Moore is liable to appellants for the injuries which are the subject matter of this action, if it be determined by the trier of the facts that such injuries were the result of any failure on her part to exercise ordinary care in the operation of the automobile which she was driving, in which Mr. and Mrs. Dahl and Mrs. Gordon were riding, and that, if it be determined that Mrs. Moore failed to exercise ordinary care for the safety of her passengers, respondent Dilling Vradenburg Organization, Inc., is also responsible, under the rule of *respondeat superior*.

I am clearly of the opinion that the relation of host and guest did not exist between the parties. Neither Mr. nor Mrs. Dahl nor Mrs. Gordon knew any of the officers of the Dilling Vradenburg Organization; nor does it appear that they were friends of Mrs. Moore. They accepted the rather insistent invitation extended to them by agents of the Dilling Vradenburg Organization to visit the latter's new subdivision, which invitation was extended to them purely as a matter of business, and with the sole object of bringing possible purchasers to the property in the hope of making a sale. The element of friendly association for purposes of mutual enjoyment between persons acquainted with one another was wholly wanting, as was also the element of transportation for the sole purpose of accommodating the person carried. While it is true that the carriage

was purely gratuitous, the expedition was none the less entirely a business proposition on the part of respondents, planned and executed by them in the hope that it would result in pecuniary benefit.

Neither was the trip a joint adventure. While it is true that it may be assumed that, if the journey resulted in the purchase of land by any of the passengers, such purchase would be made with the idea that the same would result in a desirable investment, under the circumstances here disclosed, the record not indicating that the journey was desired or initiated by the passengers, such a situation would not result in making the expedition a joint adventure. The profit to be realized by respondents from any sale made to appellants was wholly disconnected and separate from any possible profit which appellants might realize from such investment, if any was made as a result of the trip, the latter being purely incidental and inconsequential, in so far as the initiation of the journey by respondents was concerned.

While it is doubtless true that a relationship analogous to joint adventurers might result between persons engaged in riding in the same automobile from one point to another, their purposes in making the trip being entirely distinct, each having in mind his own separate advantage, no such situation is here presented.

The journey was initiated by respondents in the hope, on their part, of realizing some financial profit in which both would have an interest. To say that, under these circumstances, the driver of the car owed to appellants no more than slight care would be to very greatly extend the rule which renders a host liable only for gross negligence. To hold that the parties were joint adventurers would very greatly extend that doctrine, which, in my opinion, should be ap-

plied only in cases where it clearly appears that the parties in whatever they were doing were actuated by a common motive in following out a plan adopted for their joint benefit, or were, at least, each seeking his own advantage, and to that end employing some common means.

Because, in my opinion, the respondent Bessie Moore was, in undertaking to transport appellants from Tacoma to Seattle, acting as the agent of respondent corporation, and because, in the operation of her automobile during the trip, Mrs. Moore was in law held to the exercise of ordinary care for the safety of her passengers, I concur with the majority in holding that, by reason of error committed by the trial court in applying the rule applicable to a host and guest, the judgment appealed from must be reversed and a new trial ordered.

TOLMAN, C. J., MAIN, and MILLARD, JJ., concur with BEALS, J.