[No. 22813.   Department Two.   April 16, 1931.]

AMANDA ELIZABETH HILDING, *Respondent*, v. DEPART-
MENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Harry Ellsworth Foster,
Assistant,* for appellant.

*Homer L. Post,* for respondent.

BEELER, J.—This is an appeal from a judgment
granting to the respondent compensation under the
workmen's compensation act for the death of her
husband.

The facts are unquestioned and undisputed: For
six years prior to and on the 28th day of April, 1929,
Charles R. Hilding was employed by the Arthur Far-
rish Lumber Company at Asotin, Washington, as a

[1]Reported in 298 Pac. 321.

lumber grader and mill foreman. On the morning of April 27, 1929, Hilding, accompanied by some fellow employees, at the direction of his employer, traveled from Asotin, Washington, to Spokane, Washington, to regrade a quantity of lumber which had been shipped to that place by his employer. At a point about seventeen miles from Asotin, the highway crosses the state line into the state of Idaho, and extends for about ten miles in that state, and then passes again into the state of Washington. There is no other highway wholly within the state of Washington convenient and suitable for automobile travel between the two cities. The road traveled by Hilding is the usual route taken by motorists traveling from Asotin to Spokane or vice versa. In fact, it was necessary for Hilding to travel a short distance within the state of Idaho. On the following day, as he had finished regrading the lumber, as directed by his employer, he started on his return trip by automobile over this main traveled highway to Asotin, and, while within the state of Idaho, he encountered a heavy fog, ran off of the highway, upset his automobile, and was seriously injured, and shortly thereafter died.

The parties by stipulation presented to this court but one question: "Whether or not the industrial insurance act of the state of Washington has any extra-territorial operation." So the precise question is: Can a widow of a man, resident of, and employed in this state by an employer coming under the operation of the workmen's compensation act, who is injured outside of the state while engaged in the course of his employment, recover compensation out of the industrial insurance fund?

This precise question has not heretofore been presented to this court.

Appellant contends that the trial court erred in awarding judgment to respondent, and relies largely on the case of *In re Gould,* 215 Mass. 480, 102 N. E. 693, 4 N. C. C. A. 60. Many of the eastern courts have declined to follow the *Gould* case, *supra,* and some of them have repudiated the doctrine there announced.

The supreme court of Rhode Island, in the case of *Grinnell v. Wilkinson,* 39 R. I. 447, 98 Atl. 103, had under consideration a question in many respects identical to the question raised in the instant case. There the industrial insurance act gives an employee compensation for "personal injury by accident arising out of and *in the course of his employment."* There the injured workman, a carpenter, was sent by his employer to New Haven, Connecticut, to complete certain work. While engaged at the work in Connecticut, he sustained injury, for which he submitted a claim before the industrial board in the state of Rhode Island. Passing on the question, the Rhode Island court said:

"The leading case in this country up to 1913, was Gould's Case, 215 Mass. 480, 102 N. E. 693, Ann. Cas. 1914 D 372, decided September 12, 1913, and it was doubtless upon this authority that the presiding justice relied in his decision, and he is, at first sight, apparently supported thereby. Since that time, however, certain other cases have been decided which in the opinion of this court more closely apply to our act and which we shall later discuss. . . .

"We are of the opinion that the reasoning of the cases above cited from New York, New Jersey, and Connecticut (*Post v. Burger & Gohlke,* 216 N. Y. 544, 111 N. E. 351; *Rounsaville v. Central R. Co.,* 87 New Jersey Law, 371, 94 Atl. 392; *Kennerson v. Thames Towboat Co.,* 89 Conn. 367, 94 Atl. 372) is quite applicable to the case at bar; that under the Workmen's Compensation Act of Rhode Island the relation of employer and employee is contractual and the terms of the act are to be read as a part of every contract of service between those subject to its terms; that on

principle and in reason, and in view of the purpose, scope and character of the act it should be construed and held to include injuries arising out of the state as well as those arising within it; and that the weight of authority upon acts similar to our own gives full support to our conclusion. *Gould's* Case, *supra,* stands alone so far as any cases have come to our attention, and is only deemed to be authoritative on the particular statute therein considered, which we regard as different from ours in many important respects.''

The *Gould* case, *supra,* was further repudiated by the supreme court of Colorado, in the case of *Industrial Commission v. Aetna Life Insurance Co.,* 64 Colo. 480, 174 Pac. 589, 3 A. L. R. 1336, where the court said:

''We now come to the question as to whether or not the Colorado Workmen's Compensation Act has what is termed 'extraterritorial effect.' It is contended that there can be no recovery for the reason that the accident occurred in the state of Wyoming, notwithstanding the contract was made in Colorado; that both parties to it at all times resided in Colorado; and that the services under it were to be performed partially, at least, in this state.

''Counsel concede that it is within the legislative power to give extraterritorial effect by express provision, but contend that in the absence of such expressed purpose it must be conclusively presumed that general words were intended to be limited in their application to the territorial jurisdiction of the legislature using them. The *Gould* Case, 215 Mass. 480, 4 N. C. C. A. 60, is cited to support this contention. This case construed the statute of Massachusetts, which, in respect to the question at issue, is like the Colorado law, in that the statute is voluntary, and that it does not in express terms provide for compensation in case of accidents occurring without the state. It was there held that the statute does not apply. This decision was perhaps the first involving the decision by an appellate court in this country, and the doctrine there announced has not generally been followed, but, on the contrary, has been very generally disapproved by courts of last

resort. The *Gould* case was followed and approved by Mr. Bradbury in the first edition of his work on Workmen's Compensation and State Insurance, but in the second edition of this work the author recedes from this position, and announces his belief that the doctrine which must be finally established will be, in effect, that the law of the place where a contract of employment is made will govern the rights and liabilities of employees and employers to claim and to pay compensation. It will be noted that in the *Gould* case the court relied largely on the English cases, which were in fact the only authority it had; . . . We cannot assume that the legislature ever intended such an injustice and absurdity, in the absence of some clear and express provision in the statute to that effect, which we do not find.''

The authorities generally hold that, unless the workmen's compensation act expressly provides that it shall have no extraterritorial effect, it applies to workmen employed in a state to do work outside of the territorial limits of that state. *Gooding v. Ott,* 77 W. Va. 487, 87 S. E. 862; *McGuire v. Phelan-Shirley Co.,* 111 Neb. 609, 197 N. W. 615; *Anderson v. Miller Scrap Iron Co.,* 169 Wis. 106, 170 N. W. 275, 171 N. W. 935; *Saunders' Case,* 126 Me. 144, 136 Atl. 722.

See, also, *State ex rel. Chambers v. District Court,* 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347, and extensive note.

The appellant relies on the case of *Brown v. Department of Labor and Industries,* 135 Wash. 327, 237 Pac. 733, as an authority for holding that a man killed riding in an automobile to his home after the termination of his day's work does not come within the compensation act. That is true. But the *Brown* case, *supra,* has no application to the facts in the instant case. There Brown was no longer under the control of his employer. He had ceased his day's work. Here Hilding was still in the course of his employment. His

day's work had not been finished. He was not only returning over the road and in the manner as directed by his employer, but had with him other employees of the Farrish Lumber Company. Clearly, he was still *in the course of his employment* at the time of the accident.

Our workmen's compensation act in part provides:

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: . . ." Laws of 1927, p. 815, § 2 (Rem. 1927 Sup., § 7675).

"Each workman who shall be injured in the course of his employment, . . . shall receive out of the accident fund compensation in accordance with the following schedule, . . ." Laws of 1927, p. 834, § 4 (Rem. 1927 Sup., § 7679).

In the case at hand, both the employer and the employee were residents of this state. The deceased, Hilding, went to Spokane at the direction of his employer, performed the duties required of him, started on his return to Asotin, and the accident occurred while in the state of Idaho. The contract of employment contemplated that the most practical route for the employee to follow in going to and returning from Spokane should take him for a short distance into the state of Idaho. At the time the accident occurred, Hilding was acting in furtherance of his employer's business, and hence was *in the course of his employment.* He was on the most direct route. He was traveling on the highway which he was expected to use. He left Spokane at a time when he was expected to leave. He had with him on his return trip several of his employer's workmen, and was in the act of conveying them to Asotin. All this was being done under the direction of the employer. Clearly, Hilding was acting within the scope and in the course of his employment.

The question is not whether automobile travel is extrahazardous, but whether the deceased, at the time of the accident, was in the course of his employment.

In *State ex rel. Loney v. Industrial Accident Board,* 87 Mont. 191, 286 Pac. 408, the employer was building a section of road eight miles long for the National Forest Service, five miles of which were within the state of Montana, and three miles within Glacier National Park. The accident occurred within the boundaries of the park. The contract of employment was made in Montana, and both employer and employee were residents of that state. The court, after pointing out that the weight of authority in this country sustains the view that the workmen's compensation act will apply to injuries to workmen employed in the state and injured while temporarily out of its limits, unless there is something in the act making it inapplicable or clearly denying the right to the employee to recover in such case, goes on to say:

''While Section 2847 declares: 'This act is intended to apply to all inherently hazardous works and occupations within this state,' we do not see that this necessarily excludes its operation beyond the limits of the state where the employee, in the furtherance of his employer's business which is localized in Montana, and which he is following in passing over the state line, meets with an accidental injury. The contract between employer and employee here contemplated that the road would extend into the park. The employee might or might not work on that portion of the road. The employer's business was localized in this state. The employee was acting in the course of and within the scope of his employment, furthering his employer's business, when he performed work within the park and received his injury. He should be compensated precisely as if he were injured within the state but not within the limits of the park.''

This court is committed to the doctrine that our workmen's compensation act should be liberally construed in favor of its beneficiaries. It is a humane law and founded on sound public policy, and is the result of thoughtful, painstaking and humane considerations, and its beneficent provisions should not be limited or curtailed by a narrow construction.

The judgment is affirmed.

MITCHELL, MILLARD, BEALS, and FULLERTON, JJ., concur.