[No. 22806. *En Banc.* November 6, 1931.]

CHARLES R. BURCHFIELD, *Appellant,* v. DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent.*[1]

*Lord & Moulton,* for appellant.

*The Attorney General* and *Harry Ellsworth Foster,
Assistant,* for respondent.

TOLMAN, C. J.— Appellant Burchfield, during the
month of December, 1926, was employed by the Long-
view Stevedoring Company, a Washington corpora-
tion engaged in the business of loading and stowing
cargoes on and off ships at Longview, Kelso and Van-
couver, Washington, at Rainier, Oregon, and perhaps
at other ports along the Columbia river.

On December 22, 1926, the crew of which Burchfield
was a part had, after a couple of days' labor and by
putting in overtime, completed the loading of a vessel

[1]Reported in 4 P. (2d) 858.

at Longview with all of the cargo there available. In the evening of that day, the vessel was being prepared to proceed to Vancouver, Washington, where it was anticipated she would arrive at about two o'clock a. m. of the following day. Appellant was the hatch tender, and worked both on and off of the vessel; but his time was segregated, and as to the work off of the vessel it is admitted he came under the workmen's compensation act. When appellant finished his work at Longview in the evening of December 22, he was directed by his employer to proceed with several of his fellow workmen to the dock at Vancouver, Washington, and to be there prior to the arrival of the ship, in order to assist in mooring the ship when she should reach that dock. Unquestionably, the mooring of the ship would be in the course of appellant's employment, although the work would be performed outside of regular hours and he would be compensated therefor by overtime allowances.

It is true that appellant lived at Vancouver, but we regard that as wholly unimportant, as he might have lived at any other port served by his employers and where his duties took him, or elsewhere, as suited his convenience. The distance between the dock at Longview, where appellant's services ceased in the evening of December 22, and the dock at Vancouver, where his services were to be resumed before two a. m. on the following morning, is not shown in miles. There is regular communication between the two cities by bus service, and appellant and presumably other members of the crew were allowed, in addition to their regular wage, $1.40 for transportation between Longview and Vancouver. Whether by coincidence or otherwise, that seems to be the amount of the bus fare, but appellant and his fellow workmen were left free to use any means of transportation which they might desire, the only

condition being that they should make the trip in time to resume their duties as required by the master. Whether this $1.40 be considered as compensation or as traveling expenses, we think, is entirely immaterial. Appellant testified that, when he completed his day's work in Longview, he had worked over hours, was very tired and would have remained there to get his natural rest until the following morning, except that he was otherwise directed; and in accordance with such directions, driving his own automobile, and, taking with him several of his fellow employees, he left Longview in the evening of December 22, for the purpose of going to Vancouver to be at the dock to receive the vessel in accordance with the express directions of the master.

A few miles out of Longview, appellant's automobile, in proceeding over a planked portion of the highway which was then covered with frost and ice, skidded in such a manner as to inflict upon appellant the injuries for which he now claims compensation under the act.

The sole question involved in this case is: Were the injuries suffered by appellant received in the course of his employment? Since the amendment of 1927, the question of whether the injuries were received at the plant has become immaterial. The effect of the 1927 amendment is thoroughly discussed and the language of the amendment set out in *Hama Hama Logging Co. v. Department of Labor and Industries,* 157 Wash. 96, 288 Pac. 655, and we refrain from needless repetition.

The trial court held that, at the time he was injured, the appellant was not within the course of his employment, and entered judgment dismissing the action. This appeal is prosecuted from that judgment.

 This case has been argued before a department of this court and twice heard before the court

sitting *En Banc*, and the court is even yet divided. A majority of the court feel convinced that this case is governed by the case of *Hama Hama Logging Co. v. Department of Labor and Industries, supra*, and the case of *Hilding v. Department of Labor and Industries*, 162 Wash. 168, 298 Pac. 321; and while there is strong support for our position in cases from other jurisdictions, we shall cite but a few of them as a mere incident.

In the *Hama Hama Logging Co.* case, it was said:

"When the 1927 statute is read in the light of the language of the prior act and our decisions thereunder, the legislative purpose is accentuated. The legislature intended that the protection under the workmen's compensation act should be restricted to employees injured in the course of their employment; that presence on the premises of the employer at the time of the injury is not alone sufficient. It follows that an employee, injured at a time when he is doing something solely for his own benefit or accommodation, and not while engaged in or furthering his employer's business, is not injured 'in the course of his employment.' "

And also:

"If, at the time of the injury, Spears was engaged in or was furthering his employer's business, he was injured 'in the course of his employment.' If Spears was injured at a time when he was doing something solely for his own benefit or accommodation, he was not injured 'in the course of his employment.' "

And again:

"Spears was not engaged in furthering the interests of his employer at the time he received his injuries. Those injuries were sustained on an occasion when time was his own. He was making the trip from the camp on his own time and for his own personal business or pleasure. He was not working. No one had any supervision over him. He was not receiving pay from his employer on the day he was injured."

This language in part may perhaps be said to go beyond the point there decided, but if so, it is but the logical complement or counterpart of the subject decided, and is as sound and logical as the decision. If this be correct reasoning, then, in accordance with the language just quoted, if Burchfield was engaged in, or was furthering, his employer's business at the time of his injury, he was in the course of his employment.

As we have already pointed out, the stevedoring company which employed the appellant was engaged in serving ships at at least three ports in the state of Washington and one in the state of Oregon, and perhaps at other ports along the lower Columbia river. Its business was such that, in the main, and especially as to skilled men, such as hatch tenders, the company had, and could have, but one crew; and the members of that crew were, by the nature of the business, obliged to report at the various places where work was to be performed. The men so reporting at such various places of work were allowed transportation charges to and from their home port, but only received pay for the time actually employed. When transferring from one place to another as directed by his employer, the appellant was performing his duty to that employer and was then within the scope of his employment. The transfer from port to port was just as much a matter of his employment and a duty for him to perform as was the labor which ensued after his arrival. That he was paid the cost of transfer and not wages during the time, is wholly immaterial. The question is: Was he within the scope of his employment?

Since, as we have already seen, the employer had to have a movable, instead of a stationary, crew, it was as much the duty of the crew to move from port to port as it was to perform the work at the port on arrival;

and the crew members, while so moving, were as much in the course of their employment as when actually engaged in loading or unloading a ship and earning pay.

In the case of *Hilding v. Department of Labor and Industries, supra,* the workman or employee who was injured and died, was traveling on the highway, having completed a duty for his master at Spokane, Washington, and was returning by the usual route to resume his duties at Asotin, Washington. While so traveling on the highway, and without the state, the injuries occurred. It was stipulated in that case that the only question presented to the court was that as to the extraterritorial operation of the act so as to cover injuries so received in the state of Idaho. The department seems there to have admitted that the workman was in the course of his employment while so traveling between the places employed at the direction of the master. Notwithstanding the department had admitted that Hilding was in the course of his employment, the court said:

"Here Hilding was still in the course of his employment. His day's work had not been finished. He was not only returning over the road and in the manner as directed by his employer, but had with him other employees of the Farrish Lumber Company. Clearly, he was still *in the course of his employment* at the time of the accident."

That language, while not strictly necessary to the decision, was a logical assumption without which the decision would have been unsound.

Cases from other jurisdictions, while not necessary to this decision because of what this court has already said upon the subject, are the following: *Prairie Oil & Gas Co. v. McNellis,* 146 Okla. 204, 293 Pac. 1026; *Scrivner v. Franklin School Dist.,* 293 Pac. (Idaho)

666; *Kyle v. Greene High School,* 208 Iowa 1037, 226 N. W. 71.

The minority seems to lay considerable stress upon the fact or probability that the appellant, leaving Longview when he did, had several hours of time, more than was necessary to reach the dock in Vancouver at the early morning hour appointed, and that he would or might have gone to his home in the interim. We think that is wholly beside the question and utterly immaterial. Any extra time which appellant might have used for his personal affairs would perhaps make that time and those affairs outside of the course of his employment; but he was not injured during any such outside occupation. It was immaterial to his employer whether, of the intervening hours between the cessation of the work at Longview and its resumption at Vancouver, appellant used the first, the last, or any other portion to make the trip. It was his duty to make the trip, and while making the trip at any time during the interval, he was in the course of his employment.

The workman, having been injured while in the course of his employment, is entitled to compensation.

The judgment of the trial court is reversed, with directions to enter judgment in harmony with the views herein expressed.

HOLCOMB, MILLARD, BEELER, and HERMAN, JJ., concur.

BEALS, J. (dissenting)—In my opinion, appellant, at the time he was hurt, was on his own time, and the injuries suffered by him were not received in the course of his employment. It seems clear that appellant was not to be compensated for the time consumed in the journey from Longview to Vancouver. He received an amount equal to the bus fare between the two cities,

but this was in no sense compensation for his time, but merely equalized to him the cost of transportation between the different places at which his services were required. It seems to me that the situation here is exactly the same as though appellant had been released from work at a dock in Vancouver, instead of Longview, and told to report back for work at a later hour, and he meanwhile went to his home, and was injured either while on his way home or while proceeding to the place at which he had been directed to report.

Appellant and his fellow workmen had finished one job. They were released from their employment at Longview. They were directed to report at Vancouver at a certain hour. Meanwhile, they were on their own time. They could go to Vancouver in any way they liked, as long as they arrived on schedule. Whether they dined at Kelso or Vancouver, whether they went home or to the theater, or how or at what hour they went to Vancouver, was immaterial. The master provided no physical means of transportation, nor did he give any directions concerning the same. He merely paid appellant an amount equal to the bus fare between the two cities. It is true that appellant was required to proceed to Vancouver, but this no more brings him within the course of his employment while going than he would have been had he simply gone home from the dock in Vancouver with instructions to return at some fixed hour. Appellant was compensated on an hourly basis. It is possible that, had he been paid by the week or the month, a different situation would be presented, but such is not the case.

The case of *Hama Hama Logging Co. v. Department of Labor and Industries*, 157 Wash. 96, 288 Pac. 655, in so far as it is an authority upon the questions here presented, it seems to me supports the position taken by respondent. In that case, the injured workman was

making the trip upon which he was injured "on his own time and for his own personal business or pleasure." For this reason, notwithstanding the fact he was on the master's premises and riding upon transportation furnished by the master, it was held that he was not within the purview of the workmen's compensation act.

In my opinion, the case of *Hilding v. Department of Labor and Industries*, 162 Wash. 168, 298 Pac. 321, is not here controlling, as in that case it appeared that the injured workman was directed by his employer to go to the city of Spokane and there perform certain duties, after accomplishing which he was to return to the place of his usual employment. The deceased was killed in the state of Idaho, the usual and most direct route between Spokane and his home, Asotin, passing for a short distance through that state. The principal question involved was whether or not, under these circumstances, the provisions of the workmen's compensation act applied, the parties having stipulated that but one question was presented, to wit: "Whether or not the industrial insurance act of the state of Washington has any extraterritorial operation." The opinion calls attention to the fact that the day's work of the deceased had not been finished, and it was held that he was still in the course of his employment. It seems clear that the workman was being paid for the time consumed on the trip, and, in view of the question submitted and discussed by this court in its opinion, the case is not controlling here.

This court, in the case of *Brown v. Department of Labor and Industries*, 135 Wash. 327, 237 Pac. 733, held that a workman, paid by the hour, who left his place of employment after the close of his work and proceeded in his own automobile directly towards his

home, was not, while so traveling, in the course of his employment. In its opinion, this court said:

"We think it can be safely said that ordinarily when an employee is injured while traveling the public road on his way to or from his place of work by conveyances not furnished by the employer, and he is not to be paid for the time consumed in going to and coming from his work, and at the time of his injury he is not on or in the immediate proximity of his employer's premises, the injury does not arise out of the employment, under the terms of our statutes. . . .

"The deceased was not injured near the premises of his employer, but on the public road several miles away. He was not injured on a thoroughfare leading directly to or from his employer's premises. In no true sense can it be said that the place of his death was connected with the premises of his employer. The dangers he encountered were identically those which every person who traveled that public road faced. His risk was not, as the supreme court of the United States said in the *Cudahy* case, 'beyond that to which the general public was subjected.' If respondent could recover under the facts of this case she could recover had her husband met his death ten or twenty miles away from the plant, or while traveling on a street car or railroad train, if he had been going directly home from his place of work. The legislature has not undertaken to provide compensation for those injured on their way home from, or on their way to, the premises of their employer."

It seems to me that, under the doctrine of the case last cited and the rule laid down in the cases of *Tallon v. Interborough Rapid Transit Co.*, 232 N. Y. 410, 134 N. E. 327, 21 A. L. R. 1218; *Orsinie v. Torrance*, 96 Conn. 352, 113 Atl. 924, and *Palko v. Taylor-McCoy Coal & Coke Co.*, 289 Pa. 401, 137 Atl. 625, the judgment of the trial court should be affirmed.

PARKER, MAIN, and MITCHELL, JJ., concur with BEALS, J.