[No. 26686. Department One. October 25, 1937.]

ROY Y. MAEDA, *Respondent,* v. DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 72 P. (2d) 1034.

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Allen, Froude & Hilen,* for respondent.

BLAKE, J.—Plaintiff filed a claim with the department of labor and industries for injuries alleged to have been received in the course of extrahazardous employment. The supervisor denied the claim, which ruling was, on appeal, sustained by the joint board of the department. From the order of the joint board, plaintiff appealed to the superior court, which reversed the order and remanded the claim to the department for allowance of compensation. From that judgment, the department appeals to this court.

The question to be determined is whether plaintiff was, at the time he was injured, engaged in extrahazardous employment. He was at the time in the employ of Puget Sound Vegetable Growers Association, which operated a packing plant at Sumner. He held two offices: executive secretary and secretary to the board of trustees. In the latter capacity, he was required to attend and keep minutes of the meetings of the board of trustees. For these services he received no salary. As executive secretary, he had full charge of the plant operations—sorting and packing produce, and loading it onto cars. His compensation as executive secretary was $1,500 a season, with a possible bonus of $500 in addition. His hours of labor varied in different seasons of the year. During the summer, his duties as executive secretary required as much as twenty hours a day of his time in and about the packing shed. In short, he not only had charge of the packing plant, but actively engaged in the physical labor attendant to the operations. There can be no doubt but that, in his activities as executive secretary, he was engaged in extrahazardous employment.

The injuries for which he makes claim, however, were not sustained in or about the packing plant. They were the result of an automobile collision which occurred the night of July 28-29, 1934, on the highway between Seattle and Sumner. It is his contention, nevertheless, that he was, at the time, engaged in extrahazardous employment, under the rule of such cases as *Hilding v. Department of Labor & Industries,* 162 Wash. 168, 298 Pac. 321; *Burchfield v. Department of Labor & Industries,* 165 Wash. 106, 4 P. (2d) 858; and *Morris v. Department of Labor & Industries,* 179 Wash. 423, 38 P. (2d) 395.

Those cases are similar to this case, in that the claims were predicated on injuries (death) resulting to workmen while riding in automobiles on public highways; the court holding in each case that, under the facts disclosed by the record, the workman was at the time in the course of extrahazardous employment. But it does not follow in all cases that a workman whose occupation is extrahazardous is in the course of his employment when traveling on the public highways. The cited cases must be read in the light of two rules to which this court is committed: First, that a workman whose occupation is extrahazardous, injured going to or from the place of work, is not "in the course of his employment" (*Brown v. Department of Labor & Industries,* 135 Wash. 327, 237 Pac. 733); second, a workman employed in a dual capacity—one extrahazardous, the other not—is not entitled to compensation when injured while not engaged in his extrahazardous duties (*Denny v. Department of Labor & Industries,* 172 Wash. 631, 21 P. (2d) 275).

In the light of these rules, we shall now examine the facts which we deem controlling in the present case. The board of trustees of Puget Sound Vegetable Growers Association consisted of twelve members, all

of whom resided in the vicinity of Fife and Sumner. Respondent himself lived three miles west of Sumner. During the summer, it was customary to hold trustees' meetings every Saturday at the packing plant. At the meetings held on July 14 and July 21, 1934, the matter of holding a picnic came up for discussion. It appears that it had been the custom to hold an annual picnic, to which all the members of the association were invited. At the meetings mentioned, however, it was decided to hold a picnic for the trustees only, the expense of which was to be charged, in part at least, to the association. Plans were accordingly made for a boat trip on Saturday, July 28th. Of the purpose of the trip, one of the trustees testified as follows:

"Q. For whose benefit was the picnic given? A. It was for pleasure. Q. Were the officers required to be there? A. They were not required. Q. They could stay home if they liked? A. Yes. Q. It was a pleasure trip for the directors? A. Yes. Q. Was it necessary for Mr. Maeda to go on the trip? A. I think so; because he was the Secy. and was attending to all the details of the Assn., so naturally he would be there; and if I was there I would do the same thing,—prepare for the excursion. . . . Q. Is my impression correct,—the Board of Directors feted themselves to a picnic, and the company was going to pay for it? Is that the idea? A. Yes."

And the president of the association testified:

"Q. What did you do with reference to Mr. Maeda going on this trip? Did you ask him to go, or did anyone ask him to go that you know of? A. I believe I asked him to, if he desired to go."

Respondent was directed to procure the necessary refreshments for the picnic, which he did. The party was to assemble at the dock of the Seattle Yacht Club. Respondent left his home early in the morning of July 28th, driving to Seattle without going to the packing

plant. In Seattle, he borrowed some dishes at a restaurant and then proceeded to the yacht club. There, the party, consisting of the association's sales manager, respondent, and all but one of the trustees, boarded a boat.

After cruising the sound all day, they returned to the yacht club dock at about nine o'clock. Just before leaving the boat, the trustees decided to hold a meeting at the Maneki Cafe, in Seattle, and directed the respondent to attend. Upon going to his car, respondent found a tire was flat. The others proceeded to the cafe, where respondent, after having the tire repaired, joined them at about ten-thirty. They all had something to eat. The only business discussed concerned the time that the services of the sales manager could be dispensed with. After deciding to let him go in August, the party broke up, and respondent, after returning the borrowed dishes, started for Sumner, accompanied by one of the directors. Although he said nothing about it to his companion, he testified that it was his intention to go by the packing plant and leave some supplies, belonging to the association, which remained in his car, and also check up on conditions at the plant and freight cars on the sidetrack. On the way, the accident occurred, and he sustained the injuries for which he makes claim.

Applying the rules of the cases of *Brown v. Department of Labor & Industries, supra,* and *Denny v. Department of Labor & Industries, supra,* we think it is clear that respondent was not in the course of his extrahazardous employment when he was injured.

Judgment reversed.

STEINERT, C. J., MAIN, and SIMPSON, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion, Maeda was a workman and as much in the course of extra-

hazardous employment as any workman in the three cases relied upon by him and mentioned in the majority opinion, and especially with the *Morris* case, *supra.*

Respondent is entitled to compensation.

The judgment should be affirmed.