[No. 26661. Department Two. December 7, 1937.]

JENNIE M. THOMPSON, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Harry Ellsworth Foster, Granville Egan,* and *Ralph S. Nelson,* for respondent.

MILLARD, J.—Alfred Clifford Thompson became an employee of the Safeway Stores, Inc., at that company's Pike street store in Seattle in the latter part of the year 1924. He continued ·in that employment until his death August 11, 1933, at which time he worked out of his employer's Spokane office as supervisor of meat markets in connection with eleven Safe-

[1] Reported in 73 P. (2d) 1320.

way stores in eastern Washington and three Safeway stores in Idaho.

About one month prior to the accident in question, the Safeway stores division manager of the meat department for the territory involved, directed Thompson to go to Sandpoint, Idaho, where the company maintained a grocery store, and investigate the desirability of opening a meat market in that place. The time for the making of the trip was left to Thompson's discretion. He operated his own car in the business of his company and was on duty all hours of the day and night.

Two weeks before the accident, Thompson went to Coeur d'Alene, Idaho. He was assisting Eldon J. Belyea, Safeway Stores Company's supervisor and manager at that point, in conducting a beauty contest in connection with the opening of a new store at Coeur d'Alene, on August 12, 1933. Between nine and ten p. m., August 11, 1933, Thompson and Belyea, in company with two women, motored to a tavern at Hayden lake, near Coeur d'Alene, where they remained from thirty minutes to not to exceed one hour. During that stay at the tavern, each of the two ladies had a glass of ginger ale and each of the two men had one very light highball. The two women, whose identity was not learned, refused to accompany the two men, who departed for Sandpoint from the tavern at approximately ten p. m.

When about three or four miles from Hayden lake, on the road to Sandpoint, an accident to the automobile in which only Belyea and Thompson were riding resulted in the instant death of Thompson. Belyea died forty-eight hours later in a hospital at Coeur d'Alene. The statement of Belyea, after the accident, was to the effect that, at the time of the accident, he and Thompson were on their way to Sandpoint, Idaho,

for the purpose of determining the desirability of establishing a meat market in conjunction with the grocery store of the Safeway company at that place. Thompson and Belyea informed the manager of the tavern they had to go to Sandpoint that evening and get back to Coeur d'Alene to decorate a car for the celebration to be had August 12, 1933, the next day. The manager of the grocery store in Sandpoint testified that Belyea frequently made trips to Sandpoint, and that he called as often in the evening as in the day time.

All of. the employees of the Safeway Stores, Inc., the business of which is not classified as extrahazardous, are within the protection of the workmen's compensation act under the elective adoption provision of that statute, reading as follows:

"Any employer engaged in any occupation other than those enumerated or declared to be under this act as provided in section 7674, may make written application to the director of labor and industries to fix rates of contribution for such occupation for industrial insurance and for medical aid, and thereupon it shall be the duty of the director of labor and industries through the division of industrial insurance to fix such rate, which shall be based on the hazard of such occupation in relation to the hazards of the occupations for which rates are prescribed. When such rate shall be so fixed such applicant may file notice in writing with the supervisor of industrial insurance, giving ten days' notice of his or its election to contribute under this act, and shall forthwith display in a conspicuous manner about his or its works and in a sufficient number of places to reasonably inform his or its workmen of the fact, printed notices furnished by the department stating that he or it has elected to contribute to the accident fund and the medical aid fund and stating when said election will become effective. Any workman in the employ of such applicant shall be entitled at any time within five days after the posting of said notice by his employer, or within five days

after he has been employed by an employer who has elected to become subject to this act as herein provided, to give a written notice to such employer and to the department of his election not to become subject to this act. At the expiration of the time fixed by the notice of such employer, the employer and such of his or its workmen as shall not have given such written notice of their election to the contrary shall be subject[s] to all the provisions of section 7673 to 7796, and entitled to all of the benefits thereof: Provided, however, That those who have heretofore complied with the foregoing conditions and are at the time of the passage of this amendment carried and considered by the department as within the purview of this act shall be deemed and considered as having fully complied with its terms and shall be continued by the department as entitled to all of the benefits and all of the liabilities without other or further action." Rem. Rev. Stat., § 7696 [P. C. § 3487].

From the date of the acceptance of the elective adoption provision of the workmen's compensation act until the accident in which Thompson and Belyea were killed, the entire industrial insurance premiums for both employees were paid to the department of labor and industries of this state, irrespective of whether the men were working in Idaho or in Washington.

The claim of Jennie M. Thompson for a widow's pension for the death of her husband was denied by the department of labor and industries on the grounds that Alfred Clifford Thompson was not within the protection of the workmen's compensation act of Washington, and that he was not in the course of his employment at the time he sustained the fatal injuries. From the order denying her claim, the widow appealed to the superior court for King county and there demanded a jury trial, which was granted over the department's objection. In answer to special interrogatories, the jury found that, at the time of his injury, the deceased was in the course of his employment, and that the

deceased was employed in an occupation that had been brought under the industrial insurance act by elective adoption. From the judgment entered in favor of the plaintiff, the department has appealed.

Only two questions are presented by this appeal, one of fact and one of law. The first question is whether Thompson was in the course of his employment at the time he was fatally injured. All of the evidence bearing on the question is recited above. It is all to the effect that he was on the road to Sandpoint on business of his employer at the time he was killed.

The law question is whether our industrial insurance act, when it applies solely by private contract, covers an injury in Idaho in an employment, eleven-fourteenths of which is in this state and three-fourteenths of which is in Idaho.

Any question whether, under the compulsory provisions of the workmen's compensation act, the act applies to workmen employed in this state to do work outside of the state, and who are injured in the course of their employment, is foreclosed by *Hilding v. Department of Labor & Industries,* 162 Wash. 168, 298 Pac. 321. The question there presented we stated as follows:

"Can a widow of a man, resident of, and employed in this state by an employer coming under the operation of the workmen's compensation act, who is injured outside of the state while engaged in the course of his employment, recover compensation out of the industrial insurance fund?"

We answered that question in the affirmative and said:

"The authorities generally hold that, unless the workmen's compensation act expressly provides that it shall have no extraterritorial effect, it applies to workmen employed in a state to do work outside of the territorial limits of that state."

In *Gustavson v. Department of Labor & Industries,*
187 Wash. 296, 60 P. (2d) 46, we held that the protection afforded workmen by the industrial insurance act
extends to a workman employed in this state in extra-
hazardous work and killed while temporarily out of
this state, acting in the course of his employment on
a short job for his employer who was paying premiums
under our compensation act. In the course of our
opinion in that case, we said, respecting our holding
in *Hilding v. Department of Labor & Industries,* 162
Wash. 168, 298 Pac. 321:

"We are not persuaded that we should recede from
our position in the *Hilding* case. Upon the question of
the extraterritorial application of the industrial in-
surance act, comparing that case with this, we can see
no distinction in principle between an injury sustained
by an employee while moving in an automobile in the
course of his employment and the injury to an em-
ployee while engaged in his employer's work in an im-
movable building."

In *Hilding v. Department of Labor & Industries,*
*supra,* and *Gustavson v. Department of Labor & In-
dustries, supra,* we held that the objections urged to
the extraterritorial application of our workmen's com-
pensation act under its compulsory provisions were
unsound. Those objections are no sounder when urged
in opposition to coverage of the act under the elective
adoption provisions of Rem. Rev. Stat., § 7696. When
the matter is left, as in the case at bar, to the agree-
ment of the department of labor and industries on the
one side and the employer and his workmen on the
other side, such workmen may be covered wherever
they are employed.

In support of its position, appellant cites *Sherk v.
Department of Labor & Industries,* 189 Wash. 460, 65
P. (2d) 1269. We do not find any comfort for appel-
lant in the cited authority, which is distinguishable on

the facts from the case at bar and from *Hilding v. Department of Labor & Industries, supra,* and *Gustavson v. Department of Labor & Industries, supra.* We held in *Sherk v. Department of Labor & Industries, supra,* that the workmen's compensation act does not afford protection to a workman on a job outside of this state, employed by contractors who were not engaged in business or doing any work in this state, other than to employ men to work on the job outside this state.

The judgment is affirmed.

BEALS, GERAGHTY, and ROBINSON, JJ., concur.

STEINERT, C. J., dissents.