[No. 27624. Department Two. January 25, 1940.]

EVELYN MAY RICE, *a Minor, by Henry J. Smith, her Guardian ad Litem, Respondent,* v. CLIFFORD GARL, *Defendant,* STANDARD OIL COMPANY OF CALIFORNIA, *Appellant.*[1]

[1]Reported in 98 P. (2d) 301.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Ward & Barclay,* for respondent.

STEINERT, J.—This is an action for damages for personal injuries sustained by a minor who, while walking in a northerly direction along the west shoulder of a highway, was struck by an automobile approaching from the south.  Suit was instituted against the driver of the automobile and also against the company by whom he was alleged to have been employed.  Upon

the trial before a jury, defendants at appropriate times moved for dismissal of the case and for a directed verdict; both motions were denied. Upon submission of the case to the jury, a general verdict in favor of plaintiff was returned against both defendants. Motion for judgment notwithstanding the verdict and an alternative motion for a new trial having been denied, judgment was entered for plaintiff. The defendant company alone has appealed.

Appellant's assignments of error for the most part challenge the sufficiency of the evidence to make a case for the jury on the question of whether the driver of the automobile was, at the time of the accident, the employee and servant of appellant.

■ Upon that question, the evidence necessarily must be considered in the light most favorable to respondent. *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113. Viewed in that manner, the facts, as the jury was entitled to determine them from the evidence and all reasonable inferences to be drawn therefrom, are as follows:

Appellant, Standard Oil Company, maintained office headquarters and a plant in Seattle. It also had wholesale and retail distributing stations and properties in various parts of the state. Whenever repair or emergency work was required to be done at a station or plant located north of the city of Renton and west of the Cascade mountains, a crew of men was sent from Seattle. The crew consisted of a foreman and from one to three helpers, who traveled about the territory as occasion required. In many instances, the foreman, assisted by defendant Garl, did the work. The company maintained a truck for transporting the workmen, tools, and material, to and from the places where the particular repair or emergency work was to be done.

Defendant Garl had been in the employ of appellant

during a period of five or six years prior to the time of the accident. He was not, however, a regular employee, but was engaged only as occasion demanded. It was his custom to report at the Seattle plant every Monday morning and there ascertain what opportunity he might have for work during the ensuing week. His arrangements for employment uniformly were made with the foreman, who had full authority to hire, supervise, and discharge him. Garl was paid on the basis of seventy-five cents per hour for his labor and, if he was employed full time, worked forty hours a week. He received his wages in cash direct from the foreman every Friday, which was the end of the work week. If the time necessarily consumed in traveling to a particular job did not exceed more than about two hours, he received compensation therefor; however, if it was necessary for him to work overtime during the same week in order to complete particular repairs, such work, to the extent of the time allowed for traveling, was done without additional compensation. This practice obtained with respect to all the helpers. The foreman exercised his own judgment in the matter of time allowance for traveling.

During the six months immediately preceding the accident, Garl had steady employment with the company, and was paid by the foreman the full sum of thirty dollars each week, except on two or three occasions when holidays intervened. Usually, Garl, in going to the places where the work was to be performed, accompanied the foreman in the truck, but approximately a fourth of the time he used his own automobile. These variations from the usual method of transportation, however, were with the full knowledge and consent of the foreman, although the expense of operating his car, as well as his personal expenses, on such occasions were borne solely by Garl.

On the morning of February 8, 1937, at about eight o'clock, Garl reported as usual at the Seattle plant to ascertain whether there would be any work for him. Shortly after nine o'clock, the foreman arrived from the main office with orders specifying work to be done at Bellingham, Mount Vernon, Lynden, and Point Roberts, which is just south of the Canadian border. The work so designated required a full week for completion. Garl was offered, and accepted, the opportunity of making the trip as a helper, but expressed his intention of driving to Bellingham in his own car. The foreman consented and, at the same time, informed Garl that he would take the necessary tools and material in the truck from Seattle, then drive straight through to Blaine, where he would make arrangements with the customs officials for convoy of the truck through British Columbia, which afforded the only accessible route to Point Roberts. The foreman planned to return that night to Bellingham, where he would meet Garl. The actual work at Point Roberts was to begin on Tuesday morning and was an emergency job requiring one whole day for its completion.

After some discussion between the foreman and Garl, it was agreed that Garl should proceed at once in his automobile to Bellingham, which is about ninety miles from Seattle, and upon his arrival there meet the foreman and commence work, if any was to be done at the Bellingham plant. In pursuance of that agreement, Garl started alone in his car and, after stopping at his home at Richmond Beach for a few minutes, continued on his way towards Bellingham over the same route that he would have taken had he accompanied the foreman in the truck. Shortly after noon, while he was passing through a school zone about fifteen miles south of Bellingham, Garl became involved in the accident out of which this controversy arose.

At the instance of appellant, the trial court submitted to the jury a special interrogatory calling for an answer to the question whether the appellant had the right to control Garl as to the manner in which he operated the automobile at the time of the accident. By special verdict, the jury answered the interrogatory in the affirmative.

If the judgment against appellant is to be sustained, it must rest upon the hypothesis that reasonable men might conclude from the above related evidence that Garl at the time of the accident was acting within the scope of his employment. The act of a servant is within the scope of his employment if it occurs while he is engaged in the work for which he was employed, at a time when, and in a place where, he is subject to the control of the master. Restatement of the Law of Agency, § 228; 42 C. J. 1095, 1096, §§ 856, 857; 5 Am. Jur. 709-711, § 373. When and where the servant is subject to the control of the master, depends on the contract of employment.

It is appellant's contention that the evidence does not permit a conclusion other than that Garl's employment was to begin when he actually commenced work at Point Roberts on Tuesday morning, and that, at the time of the accident, he was merely going from his home to his place of work. Appellant urges the applicability of the rule recognized and invoked in *Bourus v. Hagen,* 192 Wash. 588, 74 P. (2d) 205, that an employee who is merely going to or from work in his own automobile is ordinarily not in the course of his employment, even though, as in the case just cited, he is allowed compensation for the use of the car while engaged in and about the employer's business.

An analysis of the facts in the *Bourus* case and the other cases of this jurisdiction announcing the same rule discloses that the men were going to and from a

relatively fixed place of employment. Under such conditions, it is within the workman's discretion to determine his place of residence with reference to the location of his work, so that he may reasonably travel the necessary distance between the two. Usually, his method of going to and from work in such a case is of no concern to the employer, as he does not seek to control its accomplishment by the contract of employment. However, if the workman's place of employment is subject to frequent and variable changes of substantial distance, his transportation may be of such importance to both himself and his employer that it is made a part of his employment. *Burchfield v. Department of Labor & Industries,* 165 Wash. 106, 4 P. (2d) 858; *Morris v. Department of Labor & Industries,* 179 Wash. 423, 38 P. (2d) 395; *Thompson v. Department of Labor & Industries,* 192 Wash. 501, 73 P. (2d) 1320.

The fact that Garl was driving his own car at the time of the accident does not compel a conclusion that he was not, therefore, then acting within the scope of his employment. Although there is a respectable number of cases which hold to the contrary, the weight of authority in this country supports the rule, as stated by the annotator in 57 A. L. R. 739, 87 A. L. R. 787, and 112 A. L. R. 921, that:

"If the circumstances involved in the case show that the activity ·in which the servant was engaged at the time of the tort complained of was within the scope of his employment, the fact that the automobile or other vehicle used by him, and which caused the injury, belonged to or was hired by the servant, will not preclude the person injured from recovering from the employer, if the servant's use of the vehicle was, either expressly or impliedly, authorized by the employer."

The cases are set forth and discussed at length in the above annotation. See, also, 6 Labatt, Master and Servant (2d ed.), 6888; 5 Blashfield, Cyclopedia of

Automobile Law and Practice, 230, § 3078; 5 Am. Jur. 728, § 393; 42 C. J. 1128, § 900.

This court has found an agency relation under similar circumstances. *Carlson v. Collier & Son Corp.*, 190 Wash. 301, 67 P. (2d) 842. See, also, *Buckley v. Harkens*, 114 Wash. 468, 195 Pac. 250; *Kludas v. Inland American Printing Co.*, 149 Wash. 180, 270 Pac. 429; *Dahl v. Moore*, 161 Wash. 503, 297 Pac. 218; *Thompson v. Department of Labor & Industries*, 192 Wash. 501, 73 P. (2d) 1320.

Although the fact that, at the time of the accident, Garl was merely engaged in going to work and the further fact that he was then driving his own automobile, may be considered as evidence tending to support a finding that he was not then engaged in the course of his employment, such evidence is not conclusive. On the other hand, there was evidence in this case from which the jury could reasonably find that the parties here intended that Garl's employment should commence at the time he left the Seattle office. It was to the advantage of appellant to have a crew familiar with the work to be done ready to travel about its territory as it was needed. The distances between the places where the work was to be performed were often great and varied. See *Burchfield v. Department of Labor & Industries*, 165 Wash. 106, 4 P. (2d) 858. Garl was, at least to some extent, compensated for the time he spent in traveling. Appellant furnished a vehicle for transporting the repair crew to and from work, and the inference is strong that such transportation was incident to the employment and an implied agreement in the contract. See *Venho v. Ostrander R. & Timber Co.*, 185 Wash. 138, 52 P. (2d) 1267; *Wood v. Chambers Packing Co.*, 190 Wash. 411, 68 P. (2d) 221. In the particular instance, Garl was using his own car for the

same purpose with the knowledge and consent of his employer.

Where the evidence is in conflict and more than one inference can reasonably be drawn therefrom, it is for the jury to determine, under appropriate instructions from the court, whether the servant was acting within the scope of his employment at the time of the alleged injury. *Simard v. Western Union Tel. Co.,* 194 Wash. 169, 77 P. (2d) 605; 39 C. J. 1362, § 1593. It cannot be said as a matter of law, in this case, that the jury, acting as reasonable persons, could not conclude that Garl was within the scope of his employment at the time of the accident.

Appellant relies upon a number of cases from other jurisdictions, principally Massachusetts. Of these, the leading case, and one upon which appellant mainly rests, is *Khoury v. Edison Elec. Ill. Co.,* 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159. That case undoubtedly does support appellant's contention and has been referred to in *Nettleship v. Shipman,* 161 Wash. 292, 296 Pac. 1056, as "a well considered opinion." However, the *Nettleship* case was one in which this court was considering the distinction between an independent contractor and an agency relation. That question is not involved in the case at bar. We are here concerned only with the question whether an employee was "in the course of his employment." While we do not, even now, regard the *Khoury* case as anything other than a "well considered opinion," and although we concede that it is contrary to our present conclusion, we must, in a case involving a situation such as we have here, respectfully decline to follow it. Nor are we alone in the position we take in that regard. Other jurisdictions in later cases support our view, and a number of courts have of late referred to the *Khoury* case and similar cases as expressing the minority rule,

and have declined to follow them. *Webster v. Mountain States Tel. & Tel. Co.*, 89 P. (2d) (Mont.) 602; *Cook v. Sanger*, 110 Cal. App. 90, 293 Pac. 794; *Peterson v. Brinn & Jensen Co.*, 134 Neb. 909, 280 N. W. 171; *Haywood v. Noel*, 154 So. (La. App.) 484. We may add that in *Dahl v. Moore*, 161 Wash. 503, 297 Pac. 218, which was decided subsequent to the *Nettleship* case, *supra,* the *Khoury* case, *supra,* was again mentioned, but its reasoning was not accepted as controlling of cases where an agent or servant was employed to do a specific thing.

Appellant assigns error upon three instructions given by the court. The questions raised by these assignments are answered by what we have said above, and require no further discussion.

■ Appellant further contends that the court erred in permitting examination of the witness Garl upon an assumed hypothetical state of facts, the purpose of which was to prove appellant's right of control over Garl. The questions related to whether Garl would have gone to some other location if the foreman had asked Garl to meet him there, and whether Garl would have brought a tool or fitting if the foreman had requested him to do so. Garl answered the first question by stating that he would have stopped wherever the foreman asked him to do work, and the second by saying that he would have acceded to the request out of personal friendship. Regardless of whether the examination was proper, the result of it was, in our opinion, more helpful than harmful to appellant. It is apparent that appellant could not have been prejudiced by the evidence to which it now objects.

■ Appellant's final assignment of error is predicated upon the allegation that respondent's counsel during his cross-examination of defendant Garl intimated, although he did not directly state, that the

defendant had been lodged in jail following the accident. Before the question could be answered, appellant asked that the jury be excused and thereupon moved for a mistrial. The motion was denied. Appellant, however, did not request that the jury be instructed to disregard the inquiry, and, in fact, the question was never repeated.

If that particular interrogation had any effect at all, it was only upon the question of Garl's negligence. That question, however, is not an issue upon this appeal. The determinative question here is whether Garl was in the course of his employment at the time of the accident. Furthermore, even if the question was improper, it was not so prejudicial that it could not have been cured by an instruction which appellant could have requested.

We find no reversible error in the record. The judgment is therefore affirmed.

BLAKE, C. J., BEALS, JEFFERS, and GERAGHTY, JJ., concur.