Respondent, while employed as a driver, delivering merchandise on a truck belonging to L. Marks Company, a corporation, and while engaged *Page 267 
in its business, was injured on April 13, 1926. His claim for industrial insurance was rejected on the ground that he was not employed in an extrahazardous occupation, as defined in the workmen's compensation act, and he appealed. The lower court reversed the department, and from that judgment the department has appealed.
These are the stipulated facts: L. Marks Company maintained a truck of considerable weight, such as is commonly used for heavy hauling, for delivery to its customers of merchandise sold them, which delivery constituted a part of the business or operations of that company in the wholesaling of tobacco, cigars, cigarettes and candies. The merchandise so delivered was usually contained in cartons or cases which, in some instances, would weigh as much as two hundred pounds. In conformity with these stipulated facts, the court found the facts, and concluded, as a matter of law, that respondent was engaged in an extrahazardous occupation within the meaning of the law.
[1] The sole question presented is this: Is a truck driver, employed by a wholesale merchant to operate a large truck, such as is commonly used for heavy hauling, maintained by such employer as a part of its business for the delivery to customers of heavy cartons and cases of commodities, engaged in an extrahazardous occupation, within the meaning of the workmen's compensation act?
"Workman means every person . . ., who is engaged in the employment of an employer coming under this act. . . ." Rem. Comp. Stat., § 7675.
"Employer means any person . . . engaged . . . in any extrahazardous work or who contracts with another to engage in extrahazardous work." Rem. Comp. Stat., § 7675.
Section 7674, Rem. Comp. Stat. [P.C. § 3469], as amended in § 1, ch. 182, Laws of 1921, p. 719, specified, *Page 268 
among the occupations declared to be extrahazardous, "transfer, drayage and hauling."
Section 7676, Rem. Comp. Stat., was amended by § 1, ch. 136, Laws of 1923, p. 373; Rem. 1927 Sup., § 7676, by setting forth at length the occupations to be included in the various accident fund classes, as follows:
"Class 11. 11-1 Team and truck driving (includes all warehouses operated by transfer companies). . . ." Rem. 1927 Sup., § 7676.
Appellant, therefore, contends that an employer being defined as one engaged in any extrahazardous work, which extrahazardous work is, however, specifically enumerated as to the kinds and nature of work which are extrahazardous, under the rule ofejusdem generis the meaning of the general term "extrahazardous" is limited to the kinds of work particularly enumerated and designated within the act itself, and quotes fromParker v. Pantages Theater Co., 143 Wn. 176, 254 P. 1083, as follows:
"Whether an occupation is in law extrahazardous, or not, depends upon whether the act has so declared it or it has been so found by the industrial insurance department."
It is, therefore, contended that the word "work," as used in the last statutory definition, is limited in its application from its very context and the wording of the entire act, which relates only to the business or the trade of the employer. It is argued that this is apparent when we observe that "factories," under § 7675, supra, "means an undertaking in which the business of working at commodities is carried on with power-driven machinery, and that `workshop' means the place wherein power-driven machinery is employed and manual labor is exercised by way of trade."
Appellant then deduces the conclusion that the clear legislative declaration that "work" as applied to employers *Page 269 
means business or trade, and that this construction is supported by the decision in Guerrieri v. Industrial InsuranceCommission, 84 Wn. 266, 146 P. 608, where we held that the operation of a passenger or freight elevator is not an extrahazardous employment entitling the operator to compensation for injuries within the definition of the act; that § 7674,supra, includes factories, mills, workshops, elevators, etc., and indicates an intent to cover classes of business, rather than particular pieces of machinery. Barney v. Anderson, 116 Wn. 352,199 P. 452, and Remsnider v. Union Savings Trust Co.,89 Wn. 87, 154 P. 135, Ann. Cas. 1917D 40, are cited as sustaining that construction.
Since the opinion by the Attorney General to the department of labor and industries dated July 17, 1923, the department has never classified delivery wagons and auto trucks used by stores as "transfer, drayage and hauling," nor their places of business as "warehouse and transfer" establishments. The department has, therefore, never collected premiums from such concerns. The legislature has twice met since that opinion of the AttorneyGeneral, and the adoption of that policy by the department, and no different classification has been enacted by the legislature.
The trial judge concurred in the contention of respondent, and decided the case upon the belief that every concern, which commonly uses a truck or vehicle for moving personalty, is engaged in the business of transfer, drayage and hauling. Respondent contends, therefore, that he was engaged in "truck driving" under § 7676, supra; that under § 7674 he was engaged in "transfer," defined in the dictionaries as a removal or conveyance of a thing from one place to another; and that he was engaged in "drayage" under the last section, for he was using a vehicle for carrying heavy *Page 270 
loads. It is also contended that he was engaged in "hauling" under § 7674, inasmuch as it was stipulated that the truck he was driving was such as is commonly used for heavy hauling.
Respondent then argues that the extrahazardous nature of the work in which he was engaged, when injured, is the criterion for interpretation, and not the main business of the employer, in determining his right to take under the workmen's compensation act.
Respondent then cites and quotes largely from several of our cases, which, it must be conceded, give some support to his contention.
In Wendt v. Industrial Insurance Commission, 80 Wn. 111,141 P. 311, we held that, where carpenters were engaged to put up shelving, repair fixtures, etc., in a department store which used power-driven machinery for the repair of its trucks and various work required by the store, such department store was engaged in the extrahazardous business of conducting a workshop, as defined in the act. We held that such occupation fell within the letter, as well as the spirit, of the workmen's compensation act, and that the act, because of its humaneness and declarations of a new public policy, should be interpreted liberally and broadly in harmony with its purpose to protect injured workmen and their dependents, independent of any question of fault.
Replogle v. Seattle School District No. 1, 84 Wn. 581,147 P. 196, relied upon, was a case where we held a workman employed by the school district as a storekeeper's helper, and injured while assisting an electrician temporarily, was under the act as a workman.
State v. Business Property Security Co., 87 Wn. 627,152 P. 334, was another case where a department *Page 271 
of the concern's business was clearly the repair of buildings, which was one of the occupations included in the act.
In Gowey v. Seattle Lighting Co., 108 Wn. 478,184 P. 339, we held that a girl who was injured in the office of a gas company, while operating a power-driven office machine, used for making stencils for addressing statements and bills to customers, was under the act as a workman in a workshop, as defined in the act.
Rector v. Cherry Valley Timber Co., 115 Wn. 31,196 P. 653, 13 A.L.R. 1247, held that a soldier assigned to work at logging was under the act, the court saying:
"It was the intention of the legislature to protect every one engaged in work in any of the extrahazardous industries of the state. . . . The act, as plainly as it is possible to express the idea, brings within its scope every worker in an industry which the act declares to be hazardous."
In Amsbaugh v. Department of Labor and Industries, 128 Wn. 692,224 P. 18, we discussed the effect of the amendment of the original act (Laws of 1911, p. 356, § 4) as it now exists in § 7676, Rem. Comp. Stat. In that case we said:
"Therefrom it is contended on behalf of the appellant that the segregation by an employer of his workmen into extra-hazardous and non extra-hazardous classes was abolished and that all employees were brought within the operation of the act. To that contention we cannot agree. None except those engaged in extra-hazardous occupations are or were within the purview of the act, and the italicized language found in the original law neither added to nor took from it in any particular, and it was therefore quite proper to drop it in the recast of the section by the legislature in 1915." *Page 272 
As a matter of common knowledge, many concerns in the state are engaged in the regular business of transfer, drayage and hauling for the general public for hire. Those are manifestly the "classes of business" or "industries" which the legislature had in mind, in enacting the statutes before quoted. L. Marks 
Company was not engaged in any business of transfer, drayage and hauling for hire, but was engaged only in hauling its own goods and chattels. Neither was it engaged in an industry, such as warehousing, an incidental part of which was transfer, drayage and hauling, or team and truck driving. The cases, cited and relied upon by respondent, do not announce rules contrary to this. As we said in Parker v. Pantages Theater Co., supra:
". . . if the legislature or the industrial insurance department had classified advertising sign washing as an extrahazardous occupation, although it may have been only a very infinitesimal part of the activities of the theater company, the respondent, injured in such work, would have been forced to look for his recompense to the state fund and could not have prosecuted this action; the test being whether the occupation has or has not been classified as extrahazardous in law, no matter what it may be in fact."
So, in this case: Had the legislature classified the driving of ordinary business delivery wagons or trucks, or transferring or hauling in the business of any merchandising concern, whether such business was extrahazardous or not, respondent would have come under the act.
Regardless of considerations of expediency and policy, until the legislature has explicitly brought such work under the workmen's compensation act, we shall not extend the rules, announced in the cases relied upon by respondent, to cover such activities as that *Page 273 
involved here as extrahazardous within the contemplation of the act.
The judgment is, therefore, reversed.
MACKINTOSH, C.J., FULLERTON, MAIN, and ASKREN, JJ., concur.