[No. 23608. Department One. April 12, 1932.]

LOLA MAY EVERETT, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

[1]Reported in 9 P. (2d) 1107.

*John J. Langenbach* and *Welsh & Welsh,* for appellant.

*The Attorney General, Harry Ellsworth Foster, Assistant,* and *Granville Egan,* for respondent.

BEELER, J.—This is an appeal from a judgment denying to the appellant compensation under the workmen's compensation act for the death of her husband.

The sole question to be determined is one of law, as the facts are undisputed, being presented to the court upon a written stipulation of the parties. The facts are: For several years prior to April 30, 1931, W. B. Everett was employed as resident manager and general overseer of the water department of the Puget Sound Power & Light Company, a corporation, engaged in supplying water to persons residing adjacent to, and within the corporate limits of, the city of South Bend, Washington; that Everett had general supervision of the waterworks and the actual performance of all new construction, repairs, installations, reading meters, and assisted in the collection of outstanding accounts; that his name was carried on the books of the company as a full-time employee; that his employer paid medical aid and industrial insurance based upon his salary, which was paid monthly. The stipulation further provides:

"That a short distance removed from the office of the Puget Sound Power and Light Company in South Bend, Washington, and situated in the same block, is a card room known as the Pastime Club, and that, for a long time prior to the shooting of the deceased therein, he had been in the habit of going to said card room for the purpose of collecting accounts due his employer from the owner of the said card room, and also from the customers of his employer who would frequent said card room; that, on the day in question, to-wit: the 30th day of April, 1931, about 4:30 o'clock p. m., he

left the office of his employer, stating to other employees therein that he would return to said office before the hour of five o'clock to close the office for the evening, as was his regular habit and custom of business; *thereafter,* he proceeded to *inspect some premises concerning the water meters therein* and also stopped in at the Chester Club, a card and pool room, across the street from the Pastime Card Room, to see some customers of his employer therein; that thereafter he went out on the street and proceeded to the Pastime Card Room to collect some further accounts due his employer. That, while he was in the Pastime Card Room about the hour of 4:45 o'clock p. m. on said day, he encountered a man known as Joseph Aydt, who owed the deceased a water bill of sixteen years standing or thereabouts, amounting to the sum of $1.50; *that the deceased had observed the said Aydt drawing water from a neighbor's faucet about a week or ten days prior to said shooting;* that the said Aydt was approached by the deceased and some discussion occurred concerning this old water bill *and the taking of water by the said Aydt from the faucet belonging to another customer; that in the course of said controversy the said Aydt drew a revolver from his pocket and shot the deceased through the head,* from which shooting he immediately died." (Italics ours.)

After the death of Everett, a claim for compensation was filed by the appellant with the department of labor and industries, which it rejected. Thereupon, an appeal was taken from the order of rejection to the superior court for Pacific county. The trial court affirmed the order, and this appeal followed.

The question is: Was Everett engaged in extrahazardous work, as that term is defined by the workmen's compensation act, at the *time* he met his death?

The respondent concedes that the *operation* of a waterworks falls within the classification of *extrahazardous work,* as that term is defined by the act.

"There is a hazard in all employment, but certain employments have come to be, and to be recognized as

being inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extrahazardous' wherever used in this act, to-wit: . . . waterworks, . . .'' Rem. 1927 Sup., § 7674.

It is further conceded that the decedent was killed while *in the course of his employment.* That being so, the following cases cited and relied upon by the appellant, *Hama Hama Logging Co. v. Department of Labor and Industries,* 157 Wash. 96, 288 Pac. 655; *White v. Shafer Bros. Lumber & Door Co.,* 165 Wash. 298, 5 P. (2d) 520, 8 P. (2d) 1119, and *Burchfield v. Department of Labor and Industries,* 165 Wash. 106, 4 P. (2d) 858, are not in point, as in each of those cases the question was whether the claimant was injured while *in the course of his employment.*

The act further provides:

''Inasmuch as industry should bear the greater portion of the burden of the cost of its accidents, each employer shall, prior to the fifteenth day of each month hereafter, pay into the state treasury for the accident fund, a sum equal to a percentage of his total pay-roll for the preceding calendar month, and for the medical aid fund a certain number of cents for each day worked *by workmen in extrahazardous employment* during the preceding calendar month, *in accordance with the following schedule,* to-wit:. (The same being deemed the most accurate method of equitable distribution of burden in proportion to relative hazard).'' (Italics ours.) Rem. 1927 Sup., § 7676.

The schedule then classifies various employments or occupations, and expressly excludes employees engaged in some occupations performing certain kinds of work. For illustration, the operation of a telephone or telegraph system is listed under class 13, and tele-

phone and telegraph operators are expressly excluded, the schedule reading: "13-3, Telephone and telegraph (operation and maintenance) (excludes telephone and telegraph operators)."

The operation of coke ovens is listed in class 16. All employees connected with the operation of such a plant are included, except those employed in office work. That schedule reads: "Class 16: Coke ovens (operation) (excludes office force only)."

The operation of gas works falls within class 19. The schedule there reads: "19-1 Gas works (operation) (excludes meter readers, complaint men, solicitors, and storeroom employees)."

Waterworks fall within class 23, the schedule reading: "23-1 Waterworks (operation)."

It is quite manifest that it was the intent of the legislature to cover, by the act, a workman *engaged in the operation* of a waterworks. And as we proceed, it will clearly appear, we think, that the decedent, prior to and at the time of his death, was engaged in the operation of a waterworks.

Much reliance is placed by the respondent on the decisions of this court in *Amsbaugh v. Department of Labor and Industries,* 128 Wash. 692, 224 Pac. 18, and *Edwards v. Department of Labor and Industries,* 146 Wash. 266, 262 Pac. 973, but in our opinion those cases are not controlling here. In the *Amsbaugh* case, *supra,* it was held that a boy employed solely in delivering daily newspapers on a regular route was not engaged in extrahazardous employment, although his employer operated a press room in connection with its business which was classified as extrahazardous. There the boy had no connection with the press room, and the publishing company did not contribute to the accident fund on account of newsboys or workmen engaged in the

delivery of papers. Here the employer contributed to the fund based upon the monthly wage of the decedent. Here the decedent had sole charge of the *operation* of the plant. He was its overseer and directing head. In the *Edwards* case, *supra,* it was held that a truck driver did not come under the provisions of the act for the reason that his employer's business, that of a wholesale merchant, was not classified as being extrahazardous.

The respondent earnestly contends, however, that the decedent was employed in a *dual capacity,* some of his work being extrahazardous, such as the installation of meters, construction work, repairs, etc., and some not, such as the collection of outstanding and current accounts, and then argues that, because he was fatally injured while engaged in the latter class of work, no benefits accrued under the provisions of the workmen's compensation act.

The cases of *Kramer v. Industrial Insurance Commission,* 31 Cal. App. 673, 161 Pac. 278, and *George v. Industrial Accident Commission,* 178 Cal. 733, 174 Pac. 653, are cited in support of this contention. In the *Kramer* case, *supra,* the claimant was employed both as a janitor, which under the California statute is classified as extrahazardous work, and as a gardener, which is not so classified. He was injured while doing horticultural labor outside and away from the building where he was employed as a janitor. The court held that such work was not incidental to, nor connected with, his work as a janitor, and, consequently, his claim for compensation was disallowed. The same state of facts existed in the *George* case, *supra,* and the court applied the same rule.

The present case presents an entirely different state of facts. Everett, at the time he was fatally injured,

was not, according to the stipulated facts, engaged in a separate, distinct, non-hazardous employment. On the contrary, he was engaged in work incidental to, intimately connected with, and essentially a part of, the successful *operation* of the waterworks. He interrogated Aydt, not merely concerning his sixteen-year-old unpaid debt, which had long been barred by the statute of limitations, *but also concerning his recent pilfering of water from one of the water company's customers.* If the decedent had intercepted Aydt while he was actually engaged in the filching of water, and while so doing had been shot and killed by the pilferer, no one could seriously contend that he was not then engaged in extrahazardous employment. The fact that he did not detect the pilferer in the very act of wrongfully appropriating water, but met him a week or ten days later and then remonstrated with him, does not alter the situation.

Whether Everett lost his life by reason of the discussion over the unpaid water bill, or concerning the wrongful pilfering of water, or both, does not clearly appear from the stipulation. But the result would be the same in either event, since we hold that the decedent, being engaged in the *operation* of a waterworks, an occupation classified as extrahazardous, was covered by the act.

In each of the following cases, the question under consideration in many respects was similar to the one here under discussion: *Stevens v. Industrial Insurance Commission,* 346 Ill. 495, 179 N. E. 102; *O'Rourke v. O'Rourke,* 278 Pa. 52, 122 Atl. 172; *Ridenour v. Lewis,* 121 Neb. 823, 238 N. W. 745; *Katz v. A. Kadans & Co.,* 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401, and *Industrial Insurance Commission v. Hunter,* 73 Colo. 226, 214 Pac. 393. In each of those cases, it was con-

ceded that the workman was injured or killed while *in the course of his employment,* the question considered being whether the workman was injured or killed as a result of an accident arising *out* of his employment.

Recovery was allowed in the *Stevens* case, *supra.* There the claimant was a typesetter in a printing shop. He also looked after the books and collected accounts. He was given an account to collect, and while returning to the shop, was struck by an automobile and died as a result of the injury. Likewise, recovery was allowed in the *O'Rourke* case, *supra.* There the decedent was engaged as assistant foreman of a crew of men wrecking a building. At the close of the day's work, he accompanied the foreman to a nearby place to collect a bill due his father. While proceeding on this mission, the decedent and the foreman were attacked by two intoxicated men and as a result the decedent sustained a fractured skull from which he died shortly thereafter.

In the *Ridenour* case, *supra,* it was held that an employee whose duties were to repair and service radios and collect accounts, and who was shot and killed by robbers while undertaking to collect an account, was covered by the workmen's compensation act of Nebraska. The court there said:

"It would follow in the instant case that where the employment involved the installation, repair and 'servicing' of radios sold by the master, and also the collection of the master's accounts by the employee, and where such employee passing along the public streets pursuing his employment, with one of such accounts then in his possession for collection, is there assaulted for the purpose of robbery, and therein and thereby receives wounds causing his death, such injury arises out of, and in the course of, his employment."

Everett left the office at 4:30 in the afternoon, at which time he informed other employees that he would return within thirty minutes or less so as to close the office at five o'clock. He then proceeded ''to inspect some premises concerning water meters.'' Later, he met Aydt, at whose hands he lost his life. During this interval of thirty minutes, the relationship of employer and employee obtained. In other words, the decedent was on his master's business at the time he was shot and killed. In the *Katz* case, *supra,* the workman, after having delivered some merchandise for his employer, was stabbed by an insane man on the street. The court of appeals of New York held that the workman was covered by the compensation act, saying:

''The question is whether claimant's injuries arose out of his employment.

''If the work itself involves exposure to perils of the street, strange, unanticipated, and infrequent though they may be, the employee passes along the streets when on his master's occasions under the protection of the statute. This is the rule unequivocally laid down by the House of Lords in England. 'When a workman is sent into the street on his master's business, his employment necessarily involves exposure to the risks of the street, and injury from such a cause necessarily arises out of his employment.' (Finley, L. C., in *Dennis v. White & Co.,* 1917 A. C. 479.) So we have to concern ourselves only with the question whether claimant's accident arose out of a street risk.

''Cases may arise where one is hurt in the street but where the risk is of a general nature, not peculiar to the street. Lightning strikes fortuitously in the street; bombs dropped by enemy aircraft do not expose to special danger persons in a street as distinguished from those in houses. *(Allcock v. Rogers,* House of Lords, 1918, 11 B. W. C. C. 149.) The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to

his employer. The street becomes a dangerous place when street brawlers, highwaymen, escaping criminals, or violent madmen are afoot therein as they sometimes are. The danger of being struck by them by accident is a street risk, because it is incident to passing through or being on the street when dangerous characters are abroad.'' *Katz v. A. Kadas & Co.*, 232 N. Y. 420, 134 N. E. 330.

The question whether a workman whose employer is engaged in an extrahazardous occupation may be employed in a *dual capacity* is not involved in this case. The precise question, as heretofore indicated, is whether the decedent, at the time he was fatally injured, was engaged in the *operation* of a waterworks. Inasmuch as the decedent had full charge of the waterworks, and inasmuch as his employment required him to collect outstanding accounts, and inasmuch as he was killed while engaged in attempting to collect an account or while remonstrating with Aydt for pilfering water, and inasmuch as the performance of these duties was inseparably interwoven with, and a part of, his employment as general overseer of the waterworks, it follows that the decedent, at the time he was shot, was engaged in the operation of the waterworks; and being classified as an extrahazardous occupation, it follows that the claim for compensation should have been allowed.

The judgment of the trial court is reversed, with direction to enter judgment in harmony with the views herein expressed.

TOLMAN, C. J., HERMAN, MITCHELL, and PARKER, JJ., concur.