[No. 24252. Department Two. April 21, 1933.]

CHARLES DENNY, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 21 P. (2d) 275.

632

*The Attorney General, Harry Ellsworth Foster,* and *Chas. O. Flint,* for appellant.

*Kahin & Carmody* and *Paul Coughlin,* for respondent.

STEINERT, J.—This case involves the construction of certain provisions of the workmen's compensation act. The accident out of which the injuries to the claimant arose occurred September 27, 1930. A claim was duly filed with the department of labor and industries November 5, 1930. For a period of seven months, claimant was awarded compensation at the rate of $52.50 per month; his hospital and medical bills were also paid. The total amount thus expended by the department was $603.64.

Subsequently, a full investigation of the claim was made by the department, and as a result the claim was rejected in its entirety on August 10, 1931. Demand was then made by the department upon the claimant for the return of the amounts theretofore awarded him and expended on his behalf. Upon application by claimant, a rehearing was had before the joint board of the department, at which rehearing evidence was offered on his behalf. The joint board sustained the department's order rejecting the claim.

Appeal was then taken by the claimant to the superior court for King county, and a judgment of reversal obtained, the court ordering that the claim be allowed. The department then took this appeal from the judgment of the superior court. The claimant is here the respondent, and the department is the appellant.

The facts upon which this case rests are these: A number of freight and transfer companies maintain their offices and freight depot in a warehouse located at 114 Railroad avenue south, in Seattle, Washington. These companies are not competitive, but each serves its own distinct territory. Freight is assembled throughout the city by means of trucks belonging to the respective transfer companies and brought to the warehouse, where it is unloaded, reassembled and then transported to the various points of destination. Several of these companies have their business offices in the same room in the warehouse, but have separate desks and telephones. Prior to the time of the accident, four of the companies, namely, Puget Sound Express, Inc., Seattle-Spokane Auto Freight Co., Northwest Transfer Co., and LaBree Freight Co., severally employed the respondent as a solicitor for their respective businesses. Respondent had been working for the Puget Sound Express, Inc., for about a month and a half prior to the accident.

It was the custom of respondent to leave his home in the morning and call on various shippers and prospective shippers throughout the city, soliciting the transfer of their freight over the lines of the four companies by whom he was employed. This work of soliciting was usually done by respondent on foot. About noon, after making his usual rounds, respondent would report to headquarters and turn over to the various companies the business accumulated by him in the morning. In the afternoons he usually

remained in the warehouse, unless a call took him out. His time in the afternoons was employed in moving freight, reassembling it and attending to its shipment. He also answered telephone calls, and occasionally made business trips outside the office and depot. On several occasions, he accompanied Mr. Hanna, who was the president and manager of Puget Sound Express, Inc., and assisted him to some extent in loading freight onto a truck driven by the latter.

On September 27, 1930, at about noon or a little later, respondent reported to the office and depot, according to his usual custom. While he was in an office adjoining that of the Puget Sound Express, Inc., he was summoned to the telephone by Mr. Hanna, president of that company, to answer a telephone call that had come in for respondent. The evidence does not disclose what, if anything, respondent was, or had been, doing at the time that the call came in, nor does it disclose whether respondent had then actually entered upon the discharge of the work that he usually performed in the warehouse in the afternoon. It does appear that the call had come in over a telephone listed under the name of Hood Canal Auto Freight Co., which had an office in common with Puget Sound Express, Inc., but had its own separate desk. The Hood Canal Auto Freight Co. was not one of the four companies by whom respondent was employed. It does not clearly appear from whom the call came, nor to what business it related.

In taking the call, respondent seated himself in an office chair, which immediately collapsed beneath him, precipitating him backward, causing his head to strike a radiator and severely injuring him. The Puget Sound Express, Inc., reported the accident to the department of labor and industries, naming itself as the employer and the respondent as its employe.

At the trial before the court no additional testimony was taken, the matter being submitted upon the record made before the joint board. Upon the evidence thus submitted, the court found that respondent was employed by Puget Sound Express, Inc., in the capacity of a freight solicitor; that he spent the forenoons in soliciting business, and his afternoons in unloading, checking and trucking freight; and that, while in the employ of that company, he was injured. From these findings, the court concluded that, at the time of respondent's injury, he was engaged in an extrahazardous occupation, and was within the scope of the workmen's compensation act and therefore entitled to receive compensation. Judgment was rendered accordingly.

The appellant makes some contention that respondent was not an employe of Puget Sound Express, Inc., but that his relationship was that of an independent contractor soliciting business on his own account and distributing it to the four companies above named. We think that the evidence fully established the relationship of employer and employe, and not that of independent contractor. The distinction between the two relationships is clearly pointed out in *Burchett v. Department of Labor and Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746, and *Wilson v. Times Printing Co.,* 158 Wash. 95, 290 Pac. 691. It is unnecessary to add anything further to what was said upon this question in those cases.

There is some further contention by the appellant that respondent's sole employment was that of a solicitor, and that whatever he did at the warehouse did not fall within his contract of employment, but was either gratuitous or else performed in his own interest as a solicitor. In view of the conclusion that we have reached herein, we will assume, for the pur-

poses of this case, that respondent was employed for the entire day, the forenoons being devoted to soliciting, and the afternoons to shifting, reassembling and forwarding freight.

The principal question before us is whether respondent, at the time of the accident, was engaged in an extrahazardous employment within the meaning of the workmen's compensation act.

Chapter 310, Laws of 1927, p. 819, § 3, Rem. Rev. Stat., § 7676 (a), includes within the schedule of extrahazardous employments "team and truck driving (includes all warehouses operated by transfer companies)" and "auto freight transportation." It is admitted by the appellant that the Puget Sound Express, Inc., the employer, was engaged in one or both of these extrahazardous occupations.

It is the respondent's basic contention that, since the auto freight transportation business, in which the Puget Sound Express, Inc., was engaged, had been expressly declared by the statute to be extrahazardous, and that, since respondent's entire employment and activities were in connection with such business, even at the time of the accident, therefore his injury came within the operation of the workmen's compensation act. While resting his case squarely and confidently on this contention, expressed in the form of a syllogism, the respondent's counsel in their brief advert to and discuss certain criteria which, they say, have been adopted or considered by the legislature and by the courts in determining whether a given injury falls within the act. These criteria, as enumerated by the brief, are (1) the nature of the main business of the employer, (2) the nature of the main activity of the injured employe, and (3) the nature of the particular activity in which the employe was engaged at the time of his injury. But the respondent contends

that, no matter which of these criteria be applied to his case, he is, in any event, within the operation of the act, because all of his activities of whatsoever kind were in connection with a business or occupation declared by the statute to be extrahazardous.

By this contention is presented the sweeping proposition that, if a particular business or occupation be once designated by the statute as extrahazardous, then *all* activities, of whatever kind, in connection with that business or occupation, are automatically brought within the act. To recast the proposition into an illustration, it would mean that, if a manufacturer having a factory located in one part of the state be classified as engaged in an extrahazardous business or occupation, then the activity of an agent soliciting for the purchase of materials used by the factory, or for the sale of its manufactured products, falls within the provisions of the act. To use an illustration somewhat more apt, respondent's contention would mean that, if his employer had maintained an office separate and apart from the warehouse and in another part of the city for the purpose of keeping its books and accounts, with the usual equipment of such an office, and if respondent had made such office his headquarters in the afternoons for the purpose of checking his orders and carrying on a correspondence in connection with his work of solicitation, an injury sustained by him at such office while in the course of his employment would automatically bring him within the provisions of the act.

None of our decisions go to that extent, nor do we subscribe to that view here. Of course, the case before us is not so extreme as either of the illustrations, but the illustrations, nevertheless, show how far-reaching the effect of respondent's contention is. We admit that the case at bar is, in a sense, a close

one, made so by the overlapping of distinctly different activities on the part of the respondent, and the particular time and circumstances at and under which the accident occurred.

In determining the applicability of the act to a given case, there are two requisites: (1) the business or occupation in which the employer is engaged must have been classified by the statute as extrahazardous; and (2) the injury sustained must have been received by the employe while engaged in the course of the extrahazardous work classified as such. The first of these propositions is not disputed. It appears to be the settled law of this state.

"So it has been consistently held that, although an occupation may be in fact hazardous or extrahazardous, if it has not been so recognized by the legislature in making its classification, or subsequently by the industrial insurance department, there can be no recovery from the compensation fund for injuries received while engaged in such work." *Parker v. Pantages Theater Co.,* 143 Wash. 176, 254 Pac. 1083.

The *Parker* case was cited with approval in *Edwards v. Department of Labor and Industries,* 146 Wash. 266, 262 Pac. 973.

The second proposition requires some further attention. Pursuing their discussion relative to the criteria used by this court in determining the applicability of the act, counsel analyze certain of our former decisions, and from that analysis conclude that formerly the particular activity of the employe governed, but that now the main business of the employer is the criterion. Upon the earlier doctrine, counsel cite the following cases: *Wendt v. Industrial Insurance Commission,* 80 Wash. 111, 141 Pac. 311; *Replogle v. Seattle School Dist. No. 1,* 84 Wash. 581, 147 Pac. 196; and *Gowey v. Seattle Lighting Co.,* 108 Wash. 479, 184 Pac. 339. The rule announced in these cases,

respondent asserts, has been modified by our later decisions. We will admit that there has been some modification of theory, but not to the extent, nor having the result, contended for by respondent. Our interpretation will appear as we proceed.

Counsel then cite and rely upon the following cases in support of what they say is the later doctrine: *Edwards v. Department of Labor and Industries,* 146 Wash. 266, 262 Pac. 973; *Dingman v. Department of Labor and Industries,* 157 Wash. 336, 288 Pac. 921; and *Everett v. Department of Labor and Industries,* 167 Wash. 619, 9 P. (2d) 1107.

In the *Edwards* case, it was held that a truck driver, employed by a wholesale merchant to operate a truck in the delivery of merchandise, was not under the operation of the act, because the business in which the employer was then engaged had not been classified as extrahazardous. The plaintiff therein was relying upon Rem. Comp. Stat., § 7674, which specified among the occupations declared to be extrahazardous, "transfer, drayage and hauling." The court held that the employer was not engaged in the "transfer, drayage and hauling" business, as such, nor in an industry of which transfer, drayage and hauling were an incidental part. In other words, the employer was not engaged in a business that involved employment which had been classified as extrahazardous, and hence the employe, although actually engaged in extrahazardous work, was not within the protection of the act.

In the *Dingman* case, it was held that a "handyman" employed to do all kinds of work about a beach resort, and who was injured while cranking a Ford truck with which he was hauling freight, was not within the provisions of the workmen's compensation act, for the reason that the business of his employer

had not been classified as extrahazardous. Referring to the *Edwards* case, *supra,* we said:

"It was there held that, in the absence of the proper classification, employment, though actually hazardous, would not entitle the injured workman to the benefit of the act." *Dingman v. Department of Labor and Industries,* 157 Wash. 336, 288 Pac. 921.

In the *Everett* case, the manager of the water department of a public utility corporation was, on a particular day, engaged in inspecting water meters and collecting accounts for his company. While in the course of his employment, he became involved in an argument with a third party over an old water bill, and also concerning the pilfering of water from another customer. A quarrel ensued in which Everett, the manager, was shot and killed. The operation of waterworks was classified by the act as an extrahazardous occupation. The court held that the decedent was engaged at the time in the operation of waterworks, and therefore was within the act. The reasoning by which the court came to the conclusion that the employe was at the time engaged in the operation of the waterworks, though away from the premises, was that the work that he was then doing was "incidental to, intimately connected with, and essentially a part of the successful operation" of such utility.

It will thus be seen that, in each of these cases, the court either expressly or impliedly affirmed the principles that we have already announced, namely, that the business or occupation of the employer must have been classified as extrahazardous, and that the injury must have been received by the employe while in the course of extrahazardous employment.

Taking counsel's argument, and at the same time meeting it, the rationale of our decisions prior to the *Edwards* case was not that the particular activity of

the employer solely and absolutely determined the right to compensation, but merely that, if the employer conducted any department of his business as an extrahazardous business within the meaning and terms of the act, then the employe, if at the time engaged in extrahazardous employment, would be protected by the act. On the other hand, the rationale of the later cases is not that the main business of the employer is determinative, to the exclusion of the consideration of any incidental business, but simply that the business in which the employer is actually engaged, whether it be the main one or an incidental one, must fall within the definition of extrahazardous work. In both lines of decision, the objective was the same, although the criterion by which the result was reached may have been different. In each case, the particular question was whether the occupation or business in which the employer was actually engaged was an extrahazardous one within the terms of the statute.

But, with that question settled, there still remains, as there always does, the question whether the employe, at the time, is engaged in the course of extrahazardous work within the meaning of the statute. If he is, then the requirements of the statute are complete. If he is not, then the full requirements have not been met. So, in this case, not only must the business in which the employer is engaged be an extrahazardous one, within the meaning of the statute, but, in addition thereto, the employe must be actually engaged in extrahazardous work, within such meaning; if either element be lacking, the claim does not fall within the act.

We have, in our decisions, distinctly assented to the principle that a workman employed by a concern engaged in an extrahazardous business or occupation

may, nevertheless, be serving in a dual capacity, one phase of his activity being within an extrahazardous employment, and the other without. In the *Everett* case, that principle was fully recognized. But the opinion also expressly stated that that consideration was not involved in the particular case. In *Sheldon v. Department of Labor and Industries,* 168 Wash. 571, 12 P. (2d) 751, the distinction was clearly pointed out, and the result of the decision, as distinguished from that of the *Everett* case, was rested upon that differentiation. The court therein said, on p. 574:

"No doubt, a part of the work conducted by decedent's employer was extrahazardous, but certainly the deceased was not so engaged at the time of the injury which caused his death. He was engaged at that time in driving his employer's automobile, which was devoted to the purpose of demonstrations in dealing with prospective customers, a kind of work expressly excluded from the operation of the act as extrahazardous."

In that case, it is true, the particular activity was expressly excluded by the statute, while here the exclusion arises factually. That can make no difference, however, in our opinion, where the actual facts themselves create a clear line of demarcation, and where the particular activity is "not incidental to, intimately connected with and essentially a part of the successful operation" of the business or occupation.

In the case at bar, we are satisfied that respondent was employed in a dual capacity. Essentially, he was a solicitor devoting his forenoons to that activity. If it be assumed, as we have herein assumed, that, in the afternoons, his duties were such as may have brought him within an extrahazardous employment, still there is no showing that, at the time of the accident, he had entered upon the latter phase of his employment, or that his particular activity was in any way connected

with that phase of it. He was in the office, not in the warehouse; he was called to a telephone not controlled by his employer; he received and was answering a call which was not clearly shown to have been in connection with his employer's business; and he sustained an injury through an instrumentality in no way connected with the operation of a hazardous employment. This case is more nearly controlled by that of *Amsbaugh v. Department of Labor and Industries,* 128 Wash. 692, 224 Pac. 18, than it is by the cases above cited. In the *Amsbaugh* case, it was held that, where an employer is engaged in employments both within and without the act, the act applies only in the event that the claimant's work is within the extrahazardous employment.

Referring again to the situation in the case at bar, while it may be highly desirable and profitable to solicit patronage, and while the amount of business secured may depend somewhat, as all business does, upon publicity and personal solicitation, it is not essentially a part of the operation of the business of auto freight transportation. We are therefore forced to the conclusion that the respondent was not, at the time of his injury, engaged in a hazardous employment within the operation of the act.

The judgment must therefore be, and is, reversed, with direction to the court to affirm the order of the department rejecting the claim.

BEALS, C. J., TOLMAN, BLAKE, and MAIN, JJ., concur.