[No. 25160. Department Two. November 30, 1934.]

E. J. MORRIS, *Appellant,* v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 38 P. (2d) 395.

424

*Kenneth Durham,* for appellant.

*The Attorney General* and *Browder Brown, Assistant,* for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court affirming an order made by the joint board of the department of labor and industries rejecting a claim asserted under the workmen's compensation act.

Appellant was employed as a service man by Puget Sound Power & Light Company, and, as such, was stationed at Burien, in this state. He and one other man constituted the company's "station" at that point. Appellant's duties included outside installation and service work, and also, as incidental thereto, the securing of new contracts and making collections. His regular hours of work were from ten a. m. until five p. m., after which he was subject to ordinary calls until nine-thirty p. m. In addition to this, he was subject to call at any time thereafter for emergency work in the vicinity of Burien.

There was no set time for the performance of any one of his various duties. They were intermingled as a unit, and were performed by him as time and opportunity permitted. In his work, appellant used the company's car, taking it home with him in the evening and returning to the office, or going elsewhere to do service work, with it in the morning. The company had, for some time past, reported and paid premiums on the entire salaries of its service men, thus considering

them as fully covered by the workmen's compensation act.

On the day before the accident involved herein, appellant had been directed by his immediate superior, who was located at Renton, to see Mr. H. R. Bean at White Center, at his first opportunity, and endeavor to secure from Mr. Bean a contract for power to be furnished by the company to the White Center Feed Company, with which Mr. Bean was in some way connected. Mr. Bean also operated a motion-picture theatre at White Center, and, in order to get in touch with him, it was necessary to call on him at the theatre after seven p. m.

On the night of November 1, 1932, a storm warning having been reported, appellant was ordered by the power company's dispatcher to hold himself in readiness, and to keep the company advised of his whereabouts, at all times during the night. At about eight-thirty p. m., after appellant had finished his routine service calls, he drove from Burien to White Center to see Mr. Bean regarding the proposed contract. He took with him his tools and supplies, expecting that he might have to use them during the evening.

While at the theatre, appellant was invited by Mr. Bean to attend the show then in progress. Appellant decided to remain, but, being subject to storm calls, he first went to a restaurant next door, where he telephoned the dispatcher and made arrangements whereby any emergency call for him was to be left at the restaurant. Inasmuch as Mr. Bean was a customer of the power company, appellant decided to buy his own ticket to the show rather than to go as Mr. Bean's guest. It was the policy of the company to permit its service men to do whatever was reasonably necessary to cultivate and maintain the good will of its customers. It being what is termed "Pal Night," one

ticket admitted two persons to the show. Availing himself of this privilege, appellant telephoned to a young lady living nearby, and invited her to attend the theatre with him.

After the show was over, at about eleven p. m., appellant stopped at the restaurant to see whether there was any message for him from the dispatcher. Receiving no message, he drove the young lady to her home, and then immediately started for his own home in Burien. In making the return trip, he drove back along the road over which he had come from Burien to White Center. About half way between the two points, he was crowded off the highway by another automobile, causing him to run into a mail box alongside the road. Glass from the shattered windshield of his car entered his right eye, ultimately destroying its sight. It was for this injury that claim was made to the department of labor and industries.

The trial court found that appellant, at the time of his injury, was in the course of his employment. However, the court also found that appellant was employed in a dual capacity in his work, and that, at the time of his injury, he was not engaged in an extrahazardous occupation as defined by the industrial insurance act. From these findings, the court concluded that appellant was not entitled to recover compensation.

Although the respondent prevailed in the action, it nevertheless contends here that the court erred in finding that appellant was in the course of his employment at the time of his injury. In view of our conclusion upon the merits of the case, it becomes necessary, first, to dispose of respondent's contention.

Appellant had been told to hold himself in readiness for storm calls throughout the night. He had also been directed to call on Mr. Bean at his earliest opportunity and endeavor to secure from him

a contract with the power company. In order to see Mr. Bean, it was necessary to call on him at the theatre in the evening. Using the time during which he was awaiting possible emergency calls, appellant went to the theatre for the express purpose of securing a contract from Mr. Bean. In doing so, appellant was acting under his superior's orders, and was serving the purposes and furthering the interests of his employer. Clearly, he was acting in the course of his employment. *Hilding v. Department of Labor & Industries,* 162 Wash. 168, 298 Pac. 321; *Burchfield v. Department of Labor & Industries,* 165 Wash. 106, 4 P. (2d) 858; *Hobson v. Department of Labor & Industries,* 176 Wash. 23, 27 P. (2d) 1091.

The fact that appellant attended the show in company with the young lady and the fact that he afterwards took her home, we regard as wholly immaterial. The accident occurred after appellant had resumed his homeward trip, and upon the very road that he would have taken had his return trip been made immediately after seeing the prospective customer. The particular mission upon which he had been directed contemplated a trip to White Center and return. Although the mission had been temporarily interrupted, it had not been completed at the time that the accident occurred. During the time of his actual return in completion of his mission, appellant was still in the course of his employment.

We now turn to the immediate question involved in this appeal. The error assigned by appellant is upon the finding of the court that he was employed in a dual capacity; and that, at the time of his injury, he was not engaged in an extrahazardous occupation as contemplated by the statute.

Rem. 1927 Sup., § 7676, which was in force at the time of the injury, sets up a schedule of industries and

classes of employment according to which are computed the amounts to be paid into the accident and medical aid funds by the various employers of workmen engaged in extrahazardous employment. Appellant's occupation falls under Class 13-1, designated "Electric light and power plants (operation). Electric systems (not otherwise specified)." A reference to the above statute, which is of considerable length, will reveal that the classes scheduled therein vary as to their terms of exclusion and inclusion. In some, restrictive language is used limiting the coverage to specific phases of the employment, and excluding others. For instance, "Class 16-1, Coke ovens (operation)" by its terms *excludes* the office force. In other classes, the statutory classification is broadened somewhat by additional and inclusive terms. For instance, "Class 1-4 Sewers" specifically *includes* all operations incidental to sewer construction, pipe laying, back filling, etc. In still other classes, the enumerations are general and comprehensive, and include everything within the operation of that particular occupation. For instance, "Class 13-1 Electric light and power plants (operation). Electric systems (not otherwise specified)," "Class 23-1 Waterworks (operation)" and many others of the classes, use the word "operation" in its broad sense, without restrictive language, excluding nothing and including everything that properly falls within the occupation.

In *Everett v. Department of Labor & Industries,* 167 Wash. 619, 9 P. (2d) 1107, 83 A. L. R. 1003, there was involved a situation very similar in point of fact, and also in principle, to the case at bar. In that case, a man who had sole charge of a waterworks became involved in a quarrel with a customer over a delinquent account and the pilfering of water. The altercation occurred away from the employer's premises. During

the quarrel, the employee was shot and killed. It was held in that case that the employee was engaged in the *operation* of a waterworks, and that, since the entire operation was classified as extrahazardous, the employee was, therefore, covered by the act. The department there contended, as it does here, that the workman was employed in a dual capacity; that a part of his work was of an extrahazardous nature and that a part of it was not; that, since at the time of his injury the workman was not engaged in extrahazardous employment, he was, therefore, not entitled to the benefits of the act. We held, however, that the particular work in which the employee was engaged at the time was incidental to, intimately connected with, and essentially a part of, the successful *operation* of the waterworks; and that, since the operation as a whole was within the act, the employee was entitled to recover.

This case presents the same situation. The work that appellant was engaged in at the time of his injury was inseparably intermingled and interwoven with, and a part of, his general employment as a service man engaged in the *operation* of an electric light and power plant or of an electric system; and it is conceded, of course, that the operation of such a plant or system is within the act.

The case at bar is to be distinguished from the case of *Denny v. Department of Labor & Industries*, 172 Wash. 631, 21 P. (2d) 275. In the latter case, an employee of an auto freight transportation company devoted his forenoons to soliciting freight for his employer and his afternoons to handling freight at the employer's warehouse. While using a telephone in an office adjacent to the warehouse during the noon hour and before he had entered upon the work of handling freight, the chair in which the employee was sitting

collapsed, resulting in serious injury to him. It was held that the employee was engaged in a dual capacity; that his work in the forenoons was separate and distinct from his work in the afternoons; that his two capacities were separated by a clear line of demarcation; and that, inasmuch as he had not yet entered upon the extrahazardous portion of his work at the time of his injury, he was not entitled to compensation.

The *Everett* case and the *Denny* case, taken together, define and illustrate the rule followed in this state. Where the occupation is listed as an extrahazardous one and the particular activity in which the employee is immediately engaged, though in itself not extrahazardous within the meaning of the act, is nevertheless incidental to, intimately connected with and essentially a part of the occupation classified as extrahazardous, the employee, if injured in the course of his employment, is covered by the act. On the other hand, where the employee is engaged in two or more activities in connection with work classified as extrahazardous, but the two activities are separate and distinct from each other, with a clear line of demarcation existing between them, and the particular activity in which the employee is engaged at the time of his injury is not of itself extrahazardous within the meaning of the act, then the employee, though acting in the course of his employment, is not covered by the act, despite the fact that his other activity is within the act.

This case falls within the class of the first definition, illustrated by the *Everett* case, because the activity in which the employee was engaged at the time of his injury was inseparably intermingled and interwoven with, and essentially a part of, the *operation* of an electric plant or electric system. The entire operation being classified as extrahazardous and the particular activity being incidental thereto and an essential part

thereof, appellant is entitled to the benefits of the act.

Reversed and remanded, with direction to the trial court to proceed in accordance with the views herein expressed, and to refer the matter to the department of labor and industries in conformity with the statute in such case made and provided.

BEALS, C. J., MITCHELL, HOLCOMB, and BLAKE, JJ., concur.