[No. ·26338. Department Two. May 4, 1937.]

FRANK F. HOPKINS, *Respondent*, v. THE DEPART-
MENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 67 P. (2d) 872.

252

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Kenneth Durham,* for respondent.

HOLCOMB, J.—This case is here on an appeal from a judgment by the lower court requiring appellant to award a merit rating to respondent for 1935 in computing his industrial insurance premium for that period for such of his extrahazardous activities as are classified under Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471], class 5-8:

"Chimneys, metal (erection)

. . . . . . . . . . . . . . . . . . . . . . . . .

"Iron framed structures (other than bridges)

. . . . . . . . . . . . . . . . . . . . . . . . .

"Steel frame structures (erection)
"Steeples (erection)

. . . . . . . . . . . . . . . . . . . . . . . . .

"Tanks, metal (erection)
"Tanks, wooden (erection)
"Towers, wood
"Water Towers, metal or wood (erection) . . ."

Respondent is engaged in manufacturing boilers as his principal business, under which his work is classified under Rem. Rev. Stat. (Sup.), § 7676, class 6-3, as used in the 1933 amendment:

"That the premiums of employers operating coal mines which shall include shaft sinking and all tunneling in connection with coal mines and the building industry, which shall include, all field activities in connection with the erection, alteration, repairing or

demolishing of any building or buildings or part thereof or appurtenance thereto, adapted to residential, business, governmental, educational or manufacturing uses, shall be computed on a base rate only and no merit rating credits or penalties shall be given or imposed on such employers." (Laws of 1933, chapter 193, § 1, p. 909.)

Respondent applied to appellant for a merit rating on his extrahazardous activities under class 5-8, above quoted, upon the ground that he had an experience rating which would justify a reduction in the premium paid. Appellant refused to award an industrial merit rating to respondent for such activities under that class, on the ground that those activities were embraced in the term "building industry," as used in the 1933 amendment to Rem. Rev. Stat., § 7676, holding that, under the amendment just quoted, his industrial insurance premium in class 5-8 must be assessed on the base rate method only. From the refusal of the supervisor to accord to him a merit rating for his extrahazardous activities for 1935 under class 5-8, *supra,* respondent appealed to the joint board of the department. At that hearing, respondent gave evidence through his general manager, but no testimony was introduced by the department. The action of the supervisor was sustained by the joint board, and respondent's premium was assessed on the base rate for that period. Appeal was then taken by respondent to the superior court for King county.

At the trial, it was stipulated between the parties that respondent had a favorable accident cost experience for a five year period in class 5-8.

The only question involved was the question of law as to whether or not the operations of respondent, under class 5-8, should be computed on an individual merit rating or on a base rating. The cause was submitted to the trial court on the departmental record,

after which trial the court entered findings of fact, conclusions of law, and judgment awarding respondent an individual experience rate in class 5-8 for the year 1935.

Among other things, the trial court found that respondent is not engaged in the building business, does not take contracts for building buildings, and the articles it manufactures and assembles are not buildings. The court also found:

"That the said joint board was in error in holding that the activities and employment of the plaintiff are and were such as to bring the plaintiff within the above quoted exception to the merit rating provisions of Sec. 7676 Rem. Rev. Stat. That the said work of the plaintiff in Class 5-8 was not within such exception, was not a part of the 'building industry' and the said operations of the plaintiff were within the general provisions of said Sec. 7676 and the defendant should have determined the individual premium rate to be paid by the plaintiff, based upon his accident cost experience over the period provided by law, in said Class 5-8 and charged plaintiff only therefor."

The court entered this conclusion of law:

"That the plaintiff is entitled to judgment against the defendant, reversing the order of the joint board of December 9, 1935, which order sustained the supervisor's refusal to grant the plaintiff an individual experience rating in industrial insurance Class 5-8, and remanding the said matter to the defendant department with instructions to determine an individual experience rate in industrial insurance Class 5-8 for the plaintiff for the year 1935, to charge the plaintiff only such rate in said class and credit the plaintiff with any excess paid."

■ Respondent manufactures boilers, large steel refuse burners, such as are used in connection with sawmills, large oil tanks, and large steel smoke stacks. Because of their size, they must be assembled on the premises of the purchasers. Of the payroll involved

in this issue, 3.4 per cent arises from assembling refuse burners, 1.1 per cent from assembling oil tanks, and 5.1 per cent from assembling smoke stacks, which comprise only 9.6 per cent of the entire payroll.

Appellant asserts that respondent builds two types of burners for burning waste lumber products accumulating in the operation of shingle and sawmills: a brick-lined type of burner erected on a concrete base or foundation prepared by the mill company, and an all steel air-cooled type of burner which is fastened to a concrete base by anchor bolts.

The undisputed evidence in the record is that the brick-lined type of burner is and has been obsolete for about ten years, during which time respondent has not manufactured any.

The refuse burners manufactured by respondent are always placed a considerable distance from any building, generally two hundred or two hundred fifty feet, all mill refuse being transported to the burner by a conveyor. The oil tanks are always remote from any buildings. Fifty per cent of the smoke stacks are placed completely outside of any building and connected with the boilers by breeching. Other stacks are erected on the tops of boilers, extending through large holes in the roof, supported by guy wires, but even in that case great care is taken to insure that they never touch any portion of the building. The purpose in all cases is to reduce the fire hazard.

It is a matter of common knowledge that most building work is done by small contractors with simple tools generally owned by the men themselves. Many of them do not even have permanent offices.

The first merit rating law was enacted in 1931. Its purpose was to encourage accident prevention and thereby reduce costs. It exempted coal mining probably on the plea of the operators that a catastro-

phe hazard is always present in that industry and that a single mine explosion might force even the largest operator to cease business, by raising his industrial insurance rate to a prohibitive extent. In 1933, the law was again amended, reducing the differential between the highest and lowest rates for the same work,. four to one. Doubtless for the reasons stated by us, the building industry was also excepted. Those reasons would not apply to employers like respondent operating permanent factories having large, continuous payrolls who might have some incidental work under some subdivision of class 5, such as assembling tanks, stacks and refuse burners. Hence, instead of excepting all work in class 5, the legislature limited the exception to the "building industry."

Rem. Rev. Stat., § 7674 [P. C. § 3469], declares as extrahazardous "buildings being constructed, repaired,. moved or demolished."

Rem. Rev. Stat., § 7675 [P. C. § 3470], states:

"In the sense of this act words employed mean as here stated, to-wit: . . .

"Engineering work means any work of construction, improvement or alteration or repair of buildings, structures," etc.

Appellant stresses the broad provision "all field activities," etc., of the 1933 amendment to § 7676, *supra:*

"That the premiums of employers operating . . . the building industry, which shall include, all field activities in connection with the erection, alteration, repairing or demolishing of any building or buildings or part thereof or appurtenance thereto, adapted to . . . manufacturing uses, shall be computed on a base rate only and no merit rating credits or penalties shall be given or imposed on such employers."

Many and divers are the definitions of the word "building," dependent upon the nature of the instru-

ment, charter, law, or ordinance under consideration.

We have read the cases cited by counsel, and others, and agree with both counsel and the courts generally that the meaning of the word "building" is very ambiguous, in that it has more than one generally accepted and understood meaning for various uses. *Great Eastern Casualty Co. v. Blackwelder*, 21 Ga. App. 586, 94 S. E. 843. In that case, the court held that, under a policy of accident insurance, where the injury was caused by the collapse of a part of an uncompleted building because a derrick fell thereon, such collapse was the "collapse of a building" under the terms of the policy.

A leading case defining "building," which we approve, is *La Crosse & Milwaukee R. R. Co. v. Vanderpool*, 11 Wis. 119, 78 Am. Dec. 691. It was there said:

"We think the word building, as a noun, has a common, well understood meaning, exclusive of structures of this character, and including only those which have a capacity to contain, and are designed for the habitation of man or animals, or the sheltering of property."

Without reviewing them all, many cases have followed that definition since; and under many of the cases examined, a "building" does not include oil tanks, a railroad, a wall around three sides of the stack of an iron furnace, machinery installed in a building, a lime kiln, installing a lightning rod, a floating drydock, a fence, or a bridge. Some courts, such as English and California courts, have held, in certain cases involving leaseholds or liens, that walls, fences, or hoardings were buildings. We consider those cases inapt here.

A similar case was *Flynn v. New York, W. & B. R. Co.*, 218 N. Y. 140, 112 N. E. 913, Ann. Cas. 1918B, 588, where the court held that a covenant in a deed against

the erection of a "building or structure" was broken by the construction of a railroad on certain lots.

*State v. Ebel,* 92 Mont. 413, 15 P. (2d) 233, cited by appellant, was a prosecution for burglary where a movable sheep wagon was occupied by the sheep herder as a dwelling house, which the court correctly held constituted a "house" and "building" within the burglary statute. *El Jebel Shrine Ass'n v. McGlone,* 93 Colo. 334, 26 P. (2d) 108, held that a foundation costing fifty thousand dollars was a "building" or at least part of a "building" within the constitutional provisions exempting from taxation buildings used for strictly charitable purposes. There is no likeness between those cases and this.

This court, in *State v. Clark,* 43 Wash. 664, 86 Pac. 1067, defines the word "builder" as "one who builds, or whose occupation is that of building" and "a person whose business it is to construct buildings . . . by contract."

To be in the "building industry" one must certainly be in the business of constructing "buildings," which is not the business of this respondent. *Harrel v. Quiring,* 125 Kan. 249, 264 Pac. 46, holds that, under the industrial insurance law in that state, where "building" was defined as meaning

" ' . . . any work in the erection, construction, extension, decoration, alteration, repair or demolition of any building or structural appurtenances,' "

that the work of putting up monuments or mausoleums is not "building."

It is well settled here that the classifications contained in Rem. Rev. Stat., § 7674, and Rem. Rev. Stat. (Sup.), § 7676, relate to classes of business rather than particular pieces of machinery or articles. *Guerrieri v. Industrial Ins. Commission,* 84 Wash. 266, 146 Pac. 608; *Edwards v. Department of Labor & Industries,*

146 Wash. 266, 262 Pac. 973; *Dalmasso v. Department of Labor & Industries,* 181 Wash. 294, 43 P. (2d) 32.

■ Great stress is also laid by appellant on the phrase "appurtenance thereto" in the above quoted exception. It is asserted that smoke stacks are certainly appurtenances and come within the rule of this court laid down in *Filley v. Christopher,* 39 Wash. 22, 80 Pac. 834, 109 Am. St. 853, and other like cases. The *Filley* case, *supra,* was one in which we held that a furnace and boiler in a theatre building, resting upon solid foundations, and which could not be removed without tearing away masonry, together with the pipes and radiators connected therewith, are fixtures and pass upon the sale of the realty. That case has no bearing here.

The articles manufactured and assembled by respondent are not appurtenances within the generally accepted meaning of the term. *Cherry v. Arthur,* 5 Wash. 787, 32 Pac. 744; *Chase v. Tacoma Box Co.,* 11 Wash. 377, 39 Pac. 639; *Sherrick v. Cotter,* 28 Wash. 25, 68 Pac. 172, 92 Am. St. 821; *Zimmermann v. Bosse,* 60 Wash. 556, 111 Pac. 796; *Provident Mutual Life Ins. Co. v. Smith,* 175 Wash. 356, 27 P. (2d) 580.

In the *Sherrick* case, *supra,* quoted by appellant, also, we held that a hop press was not an appurtenance and did not pass with the realty where it was not attached to the building, but was placed in a room just high enough to receive it, through an opening in the upper floor, and which could be ripped open to permit the removal of the hop press without causing material injury to the building. It supports respondent.

The articles manufactured and assembled by respondent are not structures, buildings, or appurtenances belonging to the building industry and were not intended to be excepted by the 1933 amendment.

We conclude that the judgment of the trial court was right, and it is affirmed.

STEINERT, C. J., TOLMAN, BEALS, and ROBINSON, JJ., concur.

*R. L. Clinton,* for respondent.

[1]Reported in 67 P. (2d) 868.