[No. 65-40673-3.    Division Three.    March 13, 1970.]

FRANCES I. BRODRICK, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*

*Slade Gorton, Attorney General,* and *Thomas R. Chapman, Assistant,* for appellant Department of Labor and Industries.

*Roger H. Underwood* (of *Underwood, Campbell & Zellmer*), for appellant Herigstad.

*Fredrickson, Maxey, Bell & Allison* and *Leo Fredrickson,* for respondent.

GREEN, J.—Defendants, Department of Labor and Industries and Eldon Herigstad, plaintiff's employer, appeal from

a judgment reversing an order of the Board of Industrial Insurance Appeals.

Plaintiff, Frances I. Brodrick, sustained back injuries in the course of her employment at an egg processing plant. A claim for benefits was filed with the Department of Labor and Industries. By order of the Supervisor of Industrial Insurance, the claim was rejected because it was not covered by the Industrial Insurance Act. On appeal, the Board of Industrial Insurance Appeals affirmed the supervisor's order. Plaintiff appealed to the superior court. After a trial without a jury, the court reversed the decision of the board.

The facts are stipulated.

Frances I. Brodrick, the claimant herein, reported the facts of her injury to her plant foreman, Mrs. Wiltze, on Monday, August 8, 1966. The injury was reported by the claimant as having occurred between 12:30 p.m. and 1:30 p.m. on August 6, 1966. At that time the claimant was transferring two flats of eggs, each flat containing thirty eggs, and was transferring them from the candle table. She reports that she slipped in a twisted position, causing some injury to her back, which injury occurred during the course of employment for Eldon Herigstad, Deer Park, Washington.

The employer produces and processes eggs for sale in URM Food Stores. The employer has approximately 190,000 chickens which produce approximately 120,000 eggs daily. The chickens are kept in laying barns, each designed to hold approximately 12,500 laying hens. The eggs are gathered hourly and removed for processing and refrigeration to the processing building, wherein the claimant worked. The employer does not produce the chickens nor the food which is fed to the chickens. The employer obtains the poultry known as 'started pullets' at an age of 22 weeks. After 15 months of laying, or approximately 80 weeks of life, they are butchered off the premises.

The claimant herein performed the duties of a process plant employee. Her duties were in loading the egg washer, observing the operation of the egg candler, and removing chex and dirty eggs and other imperfect eggs in the process. She was also charged with the duty of observing the operation of the automatic egg packer.

In the operation of the egg washer, she is required to lift 30 eggs from the egg cart to the egg conveyor with the use of a vacuum hand lifter. The eggs are removed from a four-wheeled hand cart to the conveyor which is operated by a ¾ HP electric motor.

In performing her duties at the egg candler, the claimant is required to pick off singly imperfect eggs by hand. The eggs are delivered to her on a ¾ HP electric roller-conveyor. The eggs are placed by her on flats holding thirty eggs each. The services that she performs at the automatic egg packer are the observance of egg cartons to see that they are in the machine and to load the empty cartons into the machine. The cartons are nested cardboard and the operators lift whatever is necessary to fill the machine. The weight would not be excessive. Operators of the egg packer are also required to keep the eggs flowing through the machine correctly, and additionally, they select jumbo eggs and pack the jumbo eggs. The egg packer is operated by about fifteen small electric motors, none of which exceeds ¼ HP.

The machines above-referred to are all one long machine, approximately fifty feet in length, with the three separate operations above noted.

The eggs that are processed are the eggs that are produced at the plant.

This egg plant is a separate but wholly owned operation of URM Food Stores, Wholesale Grocers, said plant being under a poultry operation lease to the employer. The leased premises total 155 acres of land approximately three miles east of Deer Park, Washington. The building improvements consist of the following: Employer's home, 15 laying barns each being 40 feet by 240 feet in size, processing building in which the egg candlers, washers, and other equipment is located, storage shed, two utility buildings, and a hog shed in which approximately 50 swine are maintained. The balance of the 155 acres not utilized in the egg-laying business is on a share-crop arrangement for raising of hay and grain.

■ Defendants claim the trial court erred in reversing the decision of the Board of Industrial Insurance Appeals. They argue that the operation of the employer's egg farm constitutes an agricultural pursuit and since agriculture is omitted from coverage under the Industrial Insurance Act,

plaintiff is not entitled to benefits. They cite as being directly in point and controlling of the instant case. *Department of Labor & Indus. v. McLain,* 66 Wn.2d 54, 401 P.2d 211 (1965), where an employee was injured on an egg farm. We agree.

Based on a stipulated statement of facts describing an egg producing operation substantially similar to that of the employer herein, our Supreme Court in *McLain* said:

> In this state, agriculture is omitted from the list of extrahazardous employments enumerated in RCW ch. 51.12, and is therefore not covered under the Industrial Insurance Act. As we said in *Wineberg v. Department of Labor & Indus.,* 57 Wn.2d 779, 359 P.2d 1046 (1961):
>
>> The test of the application of the Industrial Insurance Act is whether the employer's business has been classified by law as extrahazardous, regardless of the fact of hazard, and whether the employee was so engaged at the time of injury. *Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973. *The legislature has never classified agriculture pursuits as extrahazardous. Berry v. Department of Labor & Industries,* 11 Wn. (2d) 154, 118 P. (2d) 785, 140 A.L.R. 392.

The court concluded:

> We are satisfied that the operation of the Dottie Lee Egg Farm comes within the definition of farming, and constitutes an agricultural pursuit.

Plaintiff attempts to distinguish *McLain* on the basis that "one-day-old chicks were bought and thereafter raised on the premises" while in the instant case the employer purchases "started pullets" at the age of 22 weeks. It is plaintiff's position that since her employer does not obtain the chickens while they are unable to produce eggs and raise them until such time as they do produce, he is not engaging in an agricultural pursuit. We believe this is a distinction without a difference. In neither case are the chickens hatched on the premises. The age of the chickens when purchased does not determine the nature of the employer's pursuit. In both instances the employer must perform the

basic agricultural functions of caring for, feeding and sheltering the chickens and must practice established principles of egg production.

Plaintiff also argues that because URM Food Stores, Wholesale Grocers, owns the egg plant and are in the business of distributing food products, including the eggs, takes the operation out of the agricultural class. We fail to see how this in any way changes the pursuit from agricultural. It is the activity and not the ownership that is significant.

Judgment reversed.

EVANS, C. J., and MUNSON, J., concur.